## Daniel v. Whartenby.

A testator gave his estate, both real and personal, to his son, R. T., "during his natural life, and after his death to his issue, by him lawfully begotten of his body, to such issue, their heirs and assigns forever." In case R. T. should die without lawful issue, then, in that case, he devised the estate to his own widow and two sisters, "during the natural life of each of them, and to the survivor of them," and after the death of all of them to J. W., his heirs and assigns forever; with some provisions in case of the death of J. W. during the life of the widow and sisters.

*Held* that the rule in Shelly's Case did not apply, and that the estate in R. T., the first taker, was not a fee-tail, but was an estate for life, with remainder in fee to the issue of his body, contingent upon the birth of such issue, and in default of such issue remainder for life to his widow and two sisters, with remainder over in fee, after their death, to J. W.

In error to the Circuit Court for the District of Delaware. James Whartenby brought ejectment in the court below

---

* 5 Wallace, 795.

against William Daniel and others for certain premises in the State of Delaware.

Under the instructions given to the jury a verdict was rendered in favor of the plaintiff and judgment was entered accordingly. The defendants, having excepted to the instructions, sued out this writ of error and brought the case here for review.

*Mr. Reverdy Johnson, for the plaintiffs in error ; Messrs. T. F. and J. A. Bayard, contra.*

Mr. Justice SWAYNE stated the case and delivered the opinion of the court. .

The premises in controversy were devised by the will of James Tibbitt. The case turns upon the construction and effect to be given to the following clause of that instrument:

" All the rest, residue, and remainder of my estate, both real and personal, of what kind and nature soever, I give, devise, and bequeath to my son, Richard Tibbitt, during his natural life, and after his death to his issue, by him lawfully begotten of his body, to such issue, their heirs and assigns forever. In case my son, Richard Tibbitt, shall die without lawful issue, then, in that case, to my wife, Elizabeth Tibbitt, and my sister, Sarah Heath, and my sister, Rebecca Mull, during the natural life of each of them, and to the survivor of them, and, after the death of all of them, to James Whartenby, son of Thomas Whartenby, of the city of Philadelphia, to him, the said James Whartenby, his heirs and assigns forever. In case the said James Whartenby shall die before my son, Richard Tibbitt, my wife, Elizabeth, my sister, Sarah Heath, and my sister, Rebecca Mull, then, and in that case, to Samuel Stevenson, son of Philip, and to Richard Whartenby, son of John, each two hundred dollars shall be paid out of my estate, and the rest and remainder to William Whartenby, Thomas Whartenby, and John Whartenby, children of said Thomas Whartenby, of Philadelphia, to them and their heirs and assigns forever."

Richard Tibbitt, the first devisee, on the 14th of May, 1853, after the death of the testator, conveyed the premises

to Jacob Hazel, who, on the same day, reconveyed to Richard. Richard died in April, 1863, without issue, not having married. Elizabeth Tibbitt, the widow of the testator, and his · two sisters, Sarah Heath and Rebecca Mull, were living at the time of the making of the will, survived the testator, and died before the commencement of this suit. James Whartenby, the devisee in remainder, and the next in succession, is still living, and is the defendant in error in this case. The plaintiffs in error claim title by virtue of a sale under a judgment and execution against Richard Tibbitt.

The rule in Shelley's case is in force in Delaware, and an estate tail may be barred there by such a conveyance as that by Richard to Hazel.

Under the law of descents of Delaware all the children share alike—descendants from them taking *per stirpes.*

The question before us is whether the estate given to Richard, the first taker, was an estate in fee-tail, or whether he took only an estate for life, with remainder in fee to the issue of his body, contingent upon the birth of such issue, and, in default of such issue, remainder for life to his widow and two sisters, with remainder over in fee after their death to James Whartenby, the defendant in error.

It is insisted by the counsel for the plaintiffs in error that the words " issue of his body by him lawfully begotten " in the devise, are words of limitation and not of purchase, and that the rule in Shelley's case applies.

For the defendant in error it is maintained that those words are the synonym of *children,* and must have the same legal effect as if that phrase had been used by the testator instead of those found in the devise; that under the circumstances they are words of purchase, and that the rule in Shelley's case has, therefore, no application.

That rule is thus laid down by Lord Coke: " Where the ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same instrument an estate is limited, either mediately or immediately, to his heirs in fee or in fee-tail, *the heirs* are words of limitation of the estate, and not of

purchase."*    An eminent English authority gives this defi-
nition, as abridged by Chancellor Kent.  The chancellor
pronounces it accurate.  "Where a person takes an estate
of freehold, legally or equitably, under a deed, or will, or
other writing, and in the same instrument there is a limita-
tion by way of remainder, either with or without the inter-
position of another estate, of any interest of the same legal
or equitable quality to his heirs, or heirs of his body, as a
class of persons to take in succession from generation to
generation, the limitation to the heirs entitles the ancestor
to the whole estate."†

The rule is much older than Shelley's case.  In that case
several judgments in the Year-Books in the time of Edward
III are cited in support of it.  Blackstone found it recog-
nized in a case adjudged in 18th Edward II.‡  Some writers
trace its origin to the feudal system, which favors the taking
of estates by descent rather than by purchase, because in
the former case the rights of wardship, marriage, relief, and
other feudal incidents attached, while in the latter the taker
was relieved from those burdens.  Others attribute it to the
aversion of the common law to fees in abeyance, a desire to
promote the transferability of real property, and, as far as
possible, to make it liable for the specialty debts of the an-
cestor.  The subject is one of curious and learned specula-
tion rather than of any practical consequence.

Although the rule has been an undisputed canon of the
English common law for more than five centuries it has been
abolished in most of the States in our Union, and where it
still obtains, questions relating to it are of unfrequent occur-
rence.

In considering it with reference to the present case a few
cardinal principles, as well settled as the rule itself, must be
kept in view.

In construing wills, where the question of its application
arises, the intention of the testator must be fully carried out,

---

\* 1 Reports, 104.        † 1 Preston on Estates, 263, 419; 4 Kent, 245.
‡ Hargrave's Law Tracts, 501.

so far as it can be done consistently with the rules of law, but no further.* The meaning of this is that if the testator has used technical language, which brings the case within the rule, a declaration, however positive, that the rule shall not apply, or that the estate of the ancestor shall not continue beyond the primary express limitation, or that his heirs shall take by purchase and not by descent, will be unavailing to exclude the rule and cannot affect the result.† But if there are explanatory and qualifying expressions, from which it appears that the import of the technical language is contrary to the clear and plain intent of the testator, the former must yield and the latter will prevail.‡ The rule is one of property and not of construction.§

While the rule is held to apply as well to wills as to deeds, the words *issue of his body* are more flexible than the words *heirs of his body*, and courts more readily interpret the former as the synonym of *children* and a mere *descriptio personarum*, than the latter. "The word *issue* is not *ex vi termini* within the rule in Shelley's case. It depends upon the context whether it will give an estate tail to the ancestor."‖

Where there is a devise like this, if the rule in Shelley's case applies, the estate, upon the death of the first taker, goes, according to the English common-law rule of descent, to the eldest son, to the exclusion of all the other children.¶ But if to the gift in remainder there are superadded words of limitation which change this course of descent, the rule in Shelley's case does not apply and the children take by purchase.**

It remains to examine the case before us in the light of these considerations.

---

* Hargrave's Law Tracts, 489.   † Ib.; 2 Jarman on Wills, 311, 313.

‡ Hargrave's Law Tracts, 495; Wild's Case, 6 Reports, 16; Doe v. Laming, 2 Burrow, 1100; Lees v. Mosley, 1 Younge & Collyer (Exch.), 589; Bagshaw v. Spencer, 1 Vesey, 142.

§ Tod's Leading Cases on Real Property, 483..

‖ 1 Preston on Estates, 379.    ¶ Sisson v. Seabury, 1 Sumner, 244.

** Shelley's Case, Tod's Leading Cases on Real Property, 493; Montgomery v. Montgomery, 3 Jones & Latouch, 47; Doe d. Bosnall v. Harvey, 4 Barnewall & Cresswell, 610.

The estate is given to Richard, the first taker, "*during his natural life.*"

Lord Chancellor Sugden says these words "are, I think, entitled to weight, although when the intention requires it they may be wholly rejected."*

The estate is given, "after his death, to his issue by him lawfully begotten of his body." These must necessarily have been *his children.* They could not have been otherwise. It will do no violence, either to the language here used or to the context, if this clause be regarded as if the testator had substituted the latter words for the former in framing this part of the instrument. If this had been done there could have been no controversy between these parties.† The words of inheritance which follow are, " to such issue, their heirs and assigns, forever." These are the usual and largest terms employed in the creation of a fee simple estate. A descent of the property, to satisfy them, must be according to the law of inheritance of the State of Delaware with respect to fee simple property. Such would be the inevitable result, and such clearly was the intention of the devisor.

This would be an entire departure from the course of descent which must necessarily follow from the rule in Shelley's case, if that rule were to control the transmission of the inheritance. The descent prescribed is to be, not from Richard, but from his issue. The language of the testator is too explicit to leave any room for doubt upon the subject.

In *Montgomery* v. *Montgomery*, before referred to,‡ the chancellor said: " It appears to be clearly settled that a devise to A. for life, with remainder to his issue, with super-added words of limitation in a manner inconsistent with the descent from A., will give the word *issue* the operation of a word of purchase. This is established by a series of cases,

* Montgomery *v.* Montgomery, 3 Jones & Latouch, 61 ; see, also, Archer's Case, 1 Coke, 67; Clerk *v.* Day, Cro. Eliz., 313; Wild's Case, *supra;* Doe *v.* Collis, 4 Term, 294; Ginger *v.* White, Willes, 348.

† *In re* Sanders, 4 Paige, 293; Rogers *v.* Rogers, 3 Wendell, 503; Chrystie *v.* Phyfe, 19 New York, 344; Wild's Case, 6 Reports, 17.

‡ 3 Jones & Latouch, 61.

from *Doe. d. Cooper* v. *Collis,** to *Greenwood* v. *Rothwell.*"†
*Issue* is either a word of purchase or limitation, as will best
effectuate the devisor's intention.‡

The next clause is: " In case my said son, Richard Tibbitt,
shall die without lawful issue, then, and in that case, to my
wife, Elizabeth Tibbitt, my sister Sarah Heath, and my
sister, Rebecca Mull, during the natural life of each of them,
and to the survivors of them; and, after the death of all of
them, to James Whartenby, son of Thomas Whartenby, of
the city of Philadelphia, to him, the said James Whartenby,
*his heirs and assigns forever.*"

These are substitutionary devises, both contingent upon
the death of Richard without issue. In that event, an estate
for life was given to the widow and two sisters, and a re-
mainder in fee to James Whartenby. That such was the
quantity and quality of these estates, if Richard was not a
donee in tail, cannot be doubted.

Finally, the devisor declares, that " in case the said James
Whartenby shall die before my son, Richard Tibbitt, my
wife, Elizabeth, my sister, Sarah Heath, and my sister, Re-
becca Mull, then, and in that case, to Samuel Stevenson, son
of Philip, and Richard Whartenby, son of John, each two
hundred dollars shall be paid out of my estate, and the rest
and remainder to William Whartenby, Thomas Whartenby,
and John Whartenby, children of the said Thomas Whar-
tenby, of Philadelphia, to them and their heirs and assigns."

The language used with reference to the devisees last
named was sufficient, if the devise had taken effect, to give
them a fee simple estate. That language, as well as the
fact that there was no further devise over, leads necessarily
to the conclusion that such was the purpose of the testator.

In describing the estate given to Richard, and that given
to the widow and two sisters, in the contingencies specified,
the terms of the devise in each case are the same. They
are, *during the natural life* of each devisee. So, as to the

---

* 4 Term, 294.    † 6 Scott's New Reports, 670.
‡ Doe *v.* Collis, 4 Term, 294.

estate given to the issue of Richard, if any should survive him; the estate given to James Whartenby, in default of such issue; and that given contingently to the three devisees last named, the same language is employed in each case. The devise is *to them, their heirs and assigns forever.*

Why should a different effect be given to the same language when applied to different persons in the same class? If the widow and two sisters could take under that employed as to them only an estate for life, why should Richard take more? And if James Whartenby and the three last-named devisees could take a fee simple, which, laying out of view the deed to Hazel, no one questions, why not the issue of Richard, if such issue had been born and survived him? The identity of the language and the aptness of the terms employed indicate the meaning and purpose of the testator in each case.

The theory that only a life estate was intended to be given to Richard, derives further support from the solicitude manifested by the testator, that whatever Richard might take under the will should not be subjected to the payment of the liability he had incurred as the surety of his brother. In that event the testator declares that "all the right of the said Richard shall cease and determine as fully as though he were dead, and that no purchaser shall have any right, title, or claim thereby to any part of my estate so sold."

It cannot reasonably be supposed that the testator intended to give Richard a fee, which even with his consent might be "so sold," and if he had children, thus cut them off and transfer the estate out of the family; and if he left no issue, defeat the rest of the scheme of the will. These results could be guarded against only by giving a life estate to Richard, and nothing more.

In this class of cases in the English courts the doctrine of Shelley's case is applied unless there are circumstances which clearly take the devise out of that rule. Every doubt is resolved in favor of its application. Here, we think, the tendency should be otherwise.

There, the rule is in accordance with the established law

of descent—the general sentiment of the people—their public policy and the spirit of their institutions.    It helps to conserve the power and splendor of the ruling classes, by keeping property in the line of descent which the rule prescribes.

Our policy is equality of descent and distribution.    Such is the sentiment of our people, and such the spirit of *our* institutions.

This is manifested by the statutes of descent and distribution which exist in all our States and Territories.

We entertain no doubt that the testator intended to give a life estate only to Richard, and a fee simple to his issue, and that they should be the springhead of a new and independent stream of descents.    We find nothing in the law of the case which prevents our giving effect to that intent.

. We hold that the rule in Shelley's case, for the reasons stated, does not apply.    The estate given to the children of Richard was a contingent remainder.    Upon the birth of the first child it would have vested, but subject to open and let in after-born children.    The devise to Richard and his issue disposed of the entire estate.    The devises over to the widow and testator's two sisters, and to James Whartenby, were executory devises.    Upon the death of Richard, with the possibility of issue extinct, the devise to James became a remainder in fee simple vested at once in interest, but deferred as to the period of enjoyment until the termination of the intermediate life estates.*

Numerous authorities have been cited on both sides.    We have examined them and many others.    It is impossible to reconcile the conflict which they present.    Lord Chancellor Sugden said no one could do it.†    No controlling principle can be deduced from them.

The conclusion at which we have arrived is sustained by many well-considered cases, both English and American.

---

* Doe v. Howell, 10 Barnewall & Cresswell, 196 ; Doe v. Howell, 5 Manning & Ryland, 24.

† Montgomery v. Montgomery, 3 Jones & Latouch, 50.

We think that the learned judge who tried the case below instructed the jury correctly.

JUDGMENT AFFIRMED.