MARY J. TIMANUS, SARAH J. TIMANUS, HENRY GROSS, and others *vs.* HARRIET B. DUGAN and CUMBERLAND DUGAN.

*Construction of a devise—Rule in Shelley's Case—Contingent remainder—Question whether a limitation over, was after an indefinite failure of issue—Res inter Alios—Adverse possession—Statute of Limitations.*

A testatrix died in the year 1835, leaving a will dated June 24th, 1835, containing the following clause: "I also give and devise unto my daughter C. N. all my lands in the State of Maryland *during her natural life, and if she leave lawful issue,* then I give and devise the same *to the said issue in fee;* but should she die *without lawful issue,* then and in that case I give and devise the same to my other daughter A. B. wife of J. B. *during her natural life,* and after her death, *to the heirs of her body then living in fee.*" C. N. died in the year 1871, unmarried and without issue. A. B. died in the year 1836, leaving surviving her, her husband J. B., who died in the year 1846, and two children, namely, a son T. B., who died in the year 1855, intestate, unmarried and without issue, and a daughter H. B. D., who was born in the year 1832, and married C. D. in the year 1856. On an ejectment brought by H. B. D. and C. D. her husband in the year 1875, against persons claiming under a conveyance in fee made by C. N. in the year 1849, it was HELD:

1st. That C. N. took only a life estate in the lands devised.

2nd. That a decision made by Baltimore County Court, in a case in equity to which C. N. was a party, to the effect that C. N. took an estate in fee under said devise, did not bind the present plaintiffs, they not being parties to that proceeding, and making no claim through or under any person that was a party.

3rd. That the devise over to A. B. for life upon the dying of C. N. without lawful issue, was not void as being after an indefinite failure of issue.

4th. That said devise over was good as a contingent remainder.

5th. That whether A. B. took but an estate for life, or an estate tail, by force of the rule in *Shelley's Case,* was under the facts in the case unimportant

to be decided, as in either case the plaintiffs under the admitted facts would be entitled to all the land claimed.

6th. That as the plaintiffs could have asserted no claim to the possession of the estate until after the death of C. N., (under whom the defendants claimed,) in the year 1871, they were not barred by adverse possession.

APPEAL from the Court of Common Pleas.

This was an action of ejectment instituted in the year 1875 by the appellees against the appellants, in the Circuit Court for Baltimore County and thence removed to the Court of Common Pleas.

According to the admitted facts, in addition to those stated in the opinion of the Court, Isabella Nelson being the owner in fee of the property in this cause on the 27th October, 1829, leased it to Francis Bealmear for 10 years with the privilege to Bealmear of buying out the rent and reversion within the term. The leasehold interest passed by mesne assignments to John Cronmiller, who took a renewal of the lease with the same privilege of redemption from Charlotte Nelson, Isabella being then dead. Cronmiller afterwards assigned the leasehold interest to Susan, wife of John Russell, who with her husband agreed to convey in fee to Ransaler Smith. Smith filed a bill in the Baltimore County Court in Equity against Charlotte Nelson and the Russells, praying that the agreement be set aside, and alleging that Charlotte did not take a fee-simple title under the will. That Court (ARCHER and MAGRUDER, J.,) dismissed the bill, deciding that Charlotte Nelson took the fee under the will. The property afterwards, after passing through several parties under renewals of the original lease similar to the first with like clauses of redemption, ultimately was conveyed in fee by Charlotte Nelson to Charles Timanus, on the 8th October, 1849. From that time until the institution of this suit the property was held by Timanus and those claiming under him.

*Exception.*—At the trial below before the Court, the plaintiffs offered the two following prayers:

1. By the true construction of the last will of Isabella Nelson, a life estate only in the lands mentioned in the third clause of said will was devised to Charlotte Nelson, and upon the facts stated in the first admission of parties in this case, a fee-simple estate in remainder in said lands vested, upon the death of the said Charlotte, without issue, in the year 1870, in the female plaintiff, Mrs. Harriet B. Dugan, the only child then living of Ann Buchanan, who died in the life-time of the said Charlotte; and it being admitted that the land claimed in this action is the same, or part of the same land described in said clause, and that the testatrix (under whom both parties claim) was seized thereof at the time of making said will, and died seized thereof, the plaintiffs are entitled to recover the whole land described in the declaration.

2. It being admitted in this case that Isabella Nelson, the testatrix, under whom both parties claim, died in the year 1835, leaving issue, two children only, namely: Charlotte Nelson and Mrs. Ann Buchanan; that the said Ann Buchanan died in the year 1836, leaving only two children, one of whom is the plaintiff, Harriet, who was born in the year 1832, and the other of whom was her brother, Thomas Buchanan, who died in the year 1855, intestate, and without issue, and that the said Harriet was married to the plaintiff, Cumberland Dugan, in the year 1856, and that Charlotte Nelson the devisee for life, named in the third clause of the last will of the said Isabella Nelson, died in the year 1871, without issue, there are no facts or circumstances in evidence in this case upon which it is competent to find any adversary possession on the part of the defendants, or those under whom they claim, sufficient to bar the right of recovery of the plaintiff.

And the defendants offered the two prayers following :

1. If the Court, sitting as a jury, shall find that Isabella Nelson was seized of the land described in the

declaration, subject to the operation of the lease from her to Francis Bealmear, offered in evidence, and that being so seized, she made the will offered in evidence, and that she continued so seized until her death, and that she, after making said will, died : and shall further find that said Isabella, before making said will executed the lease aforesaid, and that said lease was duly recorded; and shall further find that Samuel Bealmear and James Bealmear made and delivered the assignment to Catharine Bealmear, offered in evidence, and that said Catharine made and delivered the assignment to Cronmiller, offered in evidence ; and shall further find that said Catharine, Samuel and James Bealmear, were the widow and only children of said Francis Bealmear, and that said Francis died intestate, before the date of said assignment, and shall further find that said Charlotte Nelson, executed, acknowledged and delivered the lease from her to Cronmiller, offered in evidence, and that the same was duly recorded, and that said Cronmiller executed, acknowledged and delivered the assignment from him to Susan Russell, offered in evidence, and that said assignment was duly recorded, and that said Susan Russell and her husband agreed to convey said land to Ransaler Smith, and that Record A is a duly certified copy of the proceedings therein mentioned; and shall further find that afterwards said Charlotte Nelson executed, acknowledged and delivered Exhibit E. D., No. 1, and that the same was duly recorded, and that said Beall executed and delivered the assignment to Timanus, endorsed on said Exhibit E. D., No. 1, and shall further find that said Charlotte Nelson executed, acknowledged and delivered Exhibit No. 2, and that said Charlotte Nelson afterwards executed, acknowledged and delivered Exhibit No. 3, and that said Exhibit E. D., No. 3, was duly recorded; and shall further find the matters admitted in the agreement filed in this cause, and shall further find that from the date of said Exhibit E. D.,

No. 3, until the present time, the exclusive continuous possession of said land has been in said Charles Timanus, during his life-time, living thereon, and claiming the same as his property, and the female defendants as his widow and heirs-at-law since his death, living thereon, and claiming the same as their own property, and that said Charles died before the commencement of this suit, and that the female defendants are his widow and heirs-at-law, then the verdict must be for the defendants.

2. If the Court, sitting as a jury, shall find as facts the matters hypothetically stated in defendants' first prayer, then the plaintiffs are not entitled to recover more than one-half of the land in the declaration described.

The Court (GAREY, J.,) granted the said two prayers of the plaintiffs, and refused the said two prayers of the defendants. The defendants excepted.

A verdict was rendered in favor of the plaintiffs and judgment was entered accordingly. The defendants appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*William A. Fisher* and *Charles Marshall,* for the appellants.

The will of Isabella Nelson devised to her daughter, Charlotte, an estate tail in the land of the testatrix, converted into a fee-simple estate by the statute.

It does not admit of a question that such would be the construction placed upon the devise in Westminster Hall.

In *Rae vs. Grew, Wilm.,* 272, (*S. C.,* 2 *Wils.,* 322, though not so well reported,) a testator devised unto G. for *his natural life, and after his decease, to the use of the male issue of his body lawfully to be begotton, and the heirs, male, of the body of such issue male, and for want of such male issue, then over.* It was held that G. took an estate tail.

In *Shaw vs Weigh*, 2 *Stra.*, 798, a testator devised lands to his wife for life, and, after her decease, in trust for his sisters A. and D. equally between them, *during their natural lives, without committing any manner of waste*, and if either of his sisters should happen to die, *leaving issue or issues of her or their bodies* lawfully begotton, then in trust for such issue or issues, of the mother's share, or else in trust for the survivors or survivor of them, and their respective issue or issues; and if it should happen that both of his said sisters should die without issue as aforesaid, and their issue or issues to die without issue lawfully begotten, then over. The House of Lords held that there was an estate tail in A. and D.

The case of *Denn vs. Packey* was precisely the case now before the Court. Walter Husband devised an estate to Nicholas Webb *for life, without impeachment of waste*, and *after his death, to the issue male of his body lawfully begotten, and to the heirs and assigns of such issue male forever;* and for default of such issue male, then to W. Webb for life, with remainder to the issue male of his body, and the heirs and assigns of such issue male.

It was held that N. Webb took an estate tail. *Denn vs. Packey*, 5 *Term Rep.*, *(Dun. & E.,)* 299.

In *Frank vs. Stovin*, 3 *East*, 548, Richard Frank devised to Bacon Frank his estates for the term of his *natural life, without impeachment of waste, and with power to make a jointure thereout* for any future wife, *and from and after his decease then to the use of the issue male of the body of the said Bacon Frank, lawfully to be begotten, and their heirs; and in default of such issue,* then to the use of Richard Frank, &c. The Court were of opinion that Bacon Frank took an estate tail.

Cases could be multiplied for the purpose of showing what was the rule in Westminster Hall, but those alluded to have been recognized as the leading authorities.

Unless the cases of *Chelton vs. Henderson*, 9 *Gill*, 432, and *Tongue's Lessee vs. Nutwell*, 13 *Md.*, 415, are to be

considered as introducing new doctrines, the law of Maryland does not vary from that enunciated by the English Courts. The rule in *Shelley's Case* has been adopted in this State, to the broadest extent.

Alluding to the rule, the Court of Appeals said, in *Ware vs. Richardson*, 3 *Md.*, 545, that "whatever may have been the origin or philosophy of the rule, * * * * it must, with its qualifications, nevertheless, prevail as a part of our system of real law, because it has been fully recognized and adopted as the settled law of Maryland." The Court in *Horne vs. Lyeth*, 4 *H. & J.*, 433, say "to disregard rules of interpretation sanctioned by a succession of ages, and by the decision of the most enlightened Judges, under pretence that the reason of the rule no longer exists, or that the rule itself is unreasonable, would not only prostrate the great land-marks of property, but would introduce a latitude of construction, boundless in its range and pernicious in its consequences."

We will endeavor to show hereafter that *Chelton's Lessee vs. Henderson*, and *Tongue's Lessee vs. Nutwell*, do not unsettle the rule. But we proceed now to show that prior to those cases, this Court certainly agreed with the English Courts.

In *Horne vs. Lyeth*, 4 *Harr. & Johns.*, 433, the devise was as follows: "I give and devise to my daughter Catharine, the house and lot, &c., all which I give to my said daughter during her natural life, and *after her decease, I give the same to the heirs of my said daughter Catharine.*

In *Hatten vs. Weems*, 12 *Gill and Johns.*, 86, the devise was as follows: "I give and devise to my son Henry D. Hatten, for the trusts hereinafter mentioned, one hundred and fifty acres of land, &c., to hold the same to said Hatton, and his heirs, in trust, that he permit my loving daughter, his sister, Mary R. Hatten, to have all the rents and profits arising therefrom, *during her natural life,* and *after* her death, to her children, lawfully begotten ; but if

she should die without lawful issue to heir the above mentioned land, then and in that case, I give and devise the said land to H. D. H., to him and his heirs forever." 12 *G. & J.*, 86.

The Court of Appeals were of opinion that Miss Hatton, (Mrs. Weems,) took an equitable estate tail. 12 *G. & J.*, 107.

The opinion in the case last cited was delivered by Judge ARCHER in 1841. In April, 1842, he united with Judge MAGRUDER in the opinion of the Baltimore County Court, that Miss Charlotte Nelson took the fee under the will of Isabella Nelson.

Relying upon such state of the law, Mr. Timanus, the father of the female appellants, accepted the lease from Charlotte Nelson in 1846, and purchased the reversion from her in 1849. The case of *Chelton vs. Henderson* was not decided until 1850, and if the Court of Appeals can be considered to have reversed the previously settled law in that case, the hardship would be especially glaring in the case of the appellants.

Judge ARCHER was fresh from the consideration of the question in *Hatton vs. Weems,* and enunciated the views of the Court of Appeals, when he declared that Mrs. Nelson's will gave a fee-simple to her daughter Charlotte.

But the cases in 9 *Gill* and 13 *Md.*, although departing somewhat from the line of the English cases, have not wholly overturned the rule in *Shelley's Case,* as applied to wills, and they will not sustain the rulings of Judge GAREY.

All that the Court decided in those cases was, that they would not apply the rule in *Shelley's Case,* " when the *clear and unequivocal expressions* of the will demonstrate that the intention of the testator was in direct conflict with that ascribed to him, by the application of the rule in *Shelley's Case.*" 9 *Gill,* 439.

In 13 *Md.*, 423, the Court says that "the rule in *Shelley's Case* has long been recognized and adhered to, both

in England and in this State, and we do not mean to deny or disregard its authority ; nor do we understand the decision in *Chelton vs. Henderson,* as designed to exclude the operation of that rule in the interpretation of a will, to any greater extent, than to hold that where the intention of the testator to create no larger estate in the first devisee than for life, is *clearly expressed by the will,* such intention must prevail.''

In both those cases, the Court carefully enumerates the *expressions,* which they regard as unequivocally showing such intention of the testator.

In *Chelton vs. Henderson,* they comment on the provision, that if Isaac should have issue, then *after* the death of Isaac, such issue should have the estate in fee-tail—and also upon the fact that the devise was only of the *use* of the property for his life. 9 *Gill,* 438.

In 13 *Md.,* 424, the Court carefully enumerates the expressions which are regarded as showing such intention.

In the will of Mrs. Isabella Nelson no such expressions can be found, and the language is such as has been held frequently to give an estate tail. It is submitted that there is nothing in the will to indicate the intention to cut Miss Charlotte Nelson's estate down to a life interest, except the words "*during her natural life,*" and to hold that these are sufficient, would be to repeal the statute, for there is no case for the application of the rule where they are not employed.

But the Court in its search for *expressions,* is limited by the established rules of construction. It will not disregard the rule in *Shelley's Case,* merely because of such general expressions as those found in the present will.

"The intention of the grantor is to prevail * * , but with this qualification, that it must not contravene or defeat the established rules of construction ; or in other words, the intention is to be ascertained by the legal rules of interpretation." *Ware vs Richardson,* 3 *Md.,* 459.

In England the word " issue " is construed as a word of limitation and not of purchase, unless the contrary clearly appears. 2 *Jarman on Wills*, 328, *ch.* xl.

The same presumption prevails in this State, though not to the same extent. 9 *Gill*, 437.

Notwithstanding the ruling of the Court below, there can be no doubt whatever, that Charlotte Nelson was seized in fee of an undivided half, even if the operation of rule in *Shelley's Case* did not vest the fee of the whole in her.

The devise over to Ann Buchanan was after an indefinite failure of issue of Charlotte Nelson, and was void, and if we are not justified in our first position, Mrs. Isabella Nelson died intestate of the remainder in fee, which became vested in Charlotte Nelson and Ann Buchanan, as the heirs-at-law of Isabella Nelson. It has been repeatedly decided in Maryland that a limitation over, if the devisee should die without issue, imparts an indefinite failure of issue. In *Dallam vs. Dallam's Lessee,* 7 *Harr. & Johns.,* 236, the Court of Appeals said that it had been " established by more than fifty cases," and probably no decision to the contrary can be found in any Court in this State, except the ruling in this case.

The law for this State was fully settled by *Dallam vs. Dallam,* 7 *H. & J.,* 236, and *Newton vs. Griffith,* 1 *H. & G.,* 111.

In *Tongue's Lessee vs. Nutwell,* 13 *Md.,* 415, the testator devised the land to his daughter for life, and if she left issue, he gave it to the issue in fee, according to the construction placed on the peculiar expression in the will ; and there was a limitation over to the testators in case his daughter should die without leaving issue. This was held to import an indefinite failure of issue. So far as the question now under discussion is concerned, it is impossible that two cases could be more completely identical. See

the argument also of Mr. Dorsey and Mr. Alexander, pp. 417-18.

In *Torrance vs. Torrance*, 4 *Md.*, 23, the Court construed the will as giving *life* estates to the daughters of the testator, (the special expressions being the directions to hold for the separate use of the daughters, who were *fémes covert,*) and as giving the fee to the children of the daughters.

The will provided as follows: "In the event of the decease of any of my aforesaid daughters, without leaving any child or children, or descendants of such child or children, the part or share of the estate hereinbefore devised to her or them, so dying, shall descend to and be divided among," &c. This language was held as importing an indefinite failure of issue. *Torrance vs. Torrance*, 4 *Md.*, 24-5 ; *Watkins vs. Sears*, 3 *Gill*, 492.

In *Woollen vs. Frick*, 38 *Md.*, 437, Judge MILLER says that " it cannot be doubted, that if the will contained simply a devise to A. for life, and ' in case he shall not leave issue or descendants,' then over, the limitation over, as to real estate, would be void. These words according to their settled legal construction, import a general or indefinite failure of issue, and whenever found in a will, must be taken in their technical legal sense, unless there be something clearly demonstrating a different intention on the part of the testator, restricting them to a definite failure of issue, or a failure of issue at the death of the first taker."

This states the law succinctly ; and no such restrictive words can be found in the will of Mrs. Nelson.

Another case bearing a close resemblance to that under consideration, is *Jackson vs. Dashiel*, 3 *Md. Ch. Dec.*, 257, in which the Chancellor held the limitation over to be too remote.

For a convenient collection of the English cases upon this question, see *Jarman on Wills, chapter* xlii.

*Arthur W. Machen,* for the appellees.

The rule is well settled, that where there is devise to A. for life, and after A's death, to his or her issue, with words of limitation superadded to the gift to the issue, as to such issue *and their heirs,* or, what is equivalent, to such issue *in fee,* the issue take as purchasers; and there is no room for the operation of the rule in *Shelley's Case. Shreve vs. Shreve,* 43 *Md.,* 382; *Tongue's Lessee vs. Nutwell,* 13 *Md.,* 415; *Chelton vs. Henderson,* 9 *Gill,* 432; *Slater vs. Dangerfield,* 15 *M. & W.,* 273.

Where there is a devise to A. for life, and upon A's death a gift to the issue of A. and a limitation in the will with reference to them, which has the effect of giving them a fee-simple, and there is also a gift over, in case of A's dying without issue, the words "dying without issue" do not import an indefinite failure of issue, but refer to *such* issue as were before mentioned.  *Shreve vs. Shreve,* 43 *Md.,* 382; *Turner vs. Withers,* 23 *Md.,* 42; *Montgomery vs. Montgomery,* 3 *Jo. & Latouche,* 47; *Goodright vs. Dunham,* 1 *Douglas,* 267; *Doe d. Cooper vs. Collis,* 4 *Term Rep.,* 300; *Leeming vs. Sherratt,* 2 *Hare,* 16, 17; *Page Wood V. C.,* (*Lord Hatherley,*) *Kavanagh vs. Morland, Kay,* 24, 25; *Golder vs. Cropp,* 5 *Jurist, N. S.,* 562; *Doe vs. Laming,* 2 *Burrow,* 1100, 1110; approved by SUGDEN, 3 *Jo. & Lat.,* 52; *Ginger vs. White, Willes,* 355, 366; *Baker vs. Tucker,* 3 *Ho. Lds. C.,* 106; 2 *Eng., L. & Eq.,* 1; *Daniel vs. Whartenby,* 17 *Wall.,* 639; *Bradley vs. Cartwright, Law Rep,* 2 *C. P.,* 511.; *Hilleary vs. Hilleary,* 26 *Md.,* 287.

In such a case, in the language of Lord Chancellor SUGDEN, the testator, by superadding words of limitation to the gift to the issue, "translates his own language, and clearly shows that he uses the word 'issue' as synonimous with 'children.'"  *Ryan vs. Crowley,* 1 *Lloyd & Gould,* 10.

The opinion in the late case of *Shreve vs. Shreve,* which was not published when the case was tried below, contains

so exhaustive a review of the previous decisions, and so clear a statement of what must be regarded as the present state of the law on the whole subject, that any more extended reference to authorities would be superfluous.

It is noticeable, however, that the testimony in the latest editions of *Jarman on Wills*, to the tendency of the more recent decisions in England to return to the rational principles of interpretation which prevailed in the time of Lord MANSFIELD and Lord KENYON, and were illustrated in *Goodright vs. Dunham*, and *Doe vs. Collis*, received the sanction of the Court in *Bradley vs. Cartwright, L. R.,* 2 *C. P.,* 511.

In support of the referential construction, (the strong tendency towards which of the recent cases is remarked by the editors of Jarman,) as applicable to a case like this, the following passage in the 3rd English Edition, (1861,) vol. 2, 427, 428, may be referred to.

"Where the prior gift is expressly to 'issue,' though restricted by the context to issue of a particular class, or existing at a prescribed period, it seems more obvious to apply to the objects of such prior gift the words importing a failure of issue, (the term being identical in both clauses,) than where the prior gift is in favor of *children.*" 2 *Jarman on Wills, 3rd English Edition,* (1861,) 427, 428, (364, 365, *Lib. Ed.*)

That observation is made in that part of chapter xl, which treats of dispositions of personalty ; but the reason is equally strong in cases of devises of realty. And see *Ridgeway vs. Munkittrick,* 1 *Dru. & War.,* 92, 93 ; and see 2 *Jarm. on Wills, 3rd Ed.,* 440.

ALVEY, J., delivered the opinion of the Court.

The questions that are presented in this case arise upon the construction of the last will and testament of Mrs. Isabella Nelson, late of the City of Philadelphia, who died in the year 1835. The will bears date the 24th of

June, 1835, and was executed in manner and form to pass real estate in this State. The testatrix left surviving her two children ; Charlotte Nelson and Ann Buchanan, wife of James Buchanan. The clause of the will that is here involved reads as follows : "I also give and devise unto my daughter, Charlotte Nelson, all my lands in the State of Maryland, *during her natural life, and if she leave lawful issue,* then I give and devise the same *to the said issue in fee;* but should she die *without lawful issue,* then and in that case I give and devise the same to my other daughter, Ann Buchanan, wife of James Buchanan, *during her natural life,* and after her death *to the heirs of her body then living, in fee."* Miss Charlotte Nelson was never married and never had issue, and she died in January, 1871. Mrs. Ann Buchanan, the other daughter, died in 1836, leaving surviving her her husband, James Buchanan, and two children, namely, Thomas Buchanan, who died in the year 1855, intestate, unmarried and without issue ; and Harriet B. Dugan, one of the plaintiffs in this cause, who was born in the year 1832, and was married to Cumberland Dugan, the other plaintiff, in the year 1856. James Buchanan, the father of Thomas and Harriet B., died in the year 1846.

1. Upon the construction of the recited clause of the will, the first question is, What estate did Charlotte Nelson take in the lands devised ? On the part of the plaintiffs it is contended that she took only an estate for life ; while on the part of the defendants it is insisted she took an estate in fee-tail, which, by operation of the statute, was converted into a fee-simple estate.

To a mind untrained and uninfluenced by the technical rules of the common law, as applied in the construction of wills, we suppose there could be no doubt as to what was really designed to be accomplished by the testatrix. Giving to the language employed its ordinary import, we are plainly told what right or estate she designed the

several devisees to take, and upon events she designed the estate to vest. To her daughter Charlotte she devised the lands *during her natural life, and if she left lawful issue,* then she devised the same *to the said issue in fee;* and, in default of such issue, over to her other daughter for life, and after her death to the heirs of her body then living, in fee. According to the ordinary reading and understanding of this language, the daughter Charlotte would take but a life estate, and the issue, if she left any, would take the fee-simple estate in the land. But the ordinary meaning and understanding of the language employed in a devise are frequently restrained and controlled by force of certain technical rules of construction, which have been applied from the early ages of the common law, and which have become fixed rules of property. And the question here is, whether the plain intent of the testatrix, as manifested in the language employed by her in the devise before us, shall be controlled and made to yield to the well known rule in *Shelley's Case,* 1 *Co. Rep.,* 104, whereby, if a devise be to one for life, and afterwards, in the same instrument, there is a limitation, either immediately or mediately, to his heirs generally, or heirs of his body, he takes an estate in fee-simple or fee-tail in possession in the one case, and in remainder in the other.

Now, it is contended, the word "issue," as used in the devise before us, is synonymous with, and means, "heirs of the body," and that the devise is therefore brought within the rule just stated; and that such is generally the case, in the absence of any explanatory or qualifying expressions, may be conceded to be the well established doctrine of the law. But the term *issue* may be employed either as a word of purchase or of limitation, as will best effectuate the testator's intention; and it is much more flexible than the words "heirs of the body." Courts more readily interpret the word *issue* as the synonym of children, and as a mere description of the person or persons to take,

than they do the words "heirs of the body." As is said by Mr. Preston, "the word *issue* is not *ex vi termini* within the rule in *Shelley's Case*. It depends upon the context whether it will give an estate tail to the ancestor." *Preston on Estates*, 379; *Lyles vs. Diggs*, 6 *H. & J.*, 373; *Lees vs. Mosley*, 1 *Y. & C.*, 589; *Slater vs. Dangerfield*, 15 *M. & W.*, 273; *Daniel vs. Whartenby*, 17 *Wall.*, 639. As a word of limitation, it is collective, and signifies all the descendants in all generations; but as a word of purchase it denotes the particular person or class of persons to take under the devise. And the question is, whether, in the devise under the consideration, the word should be construed as a word of limitation, or as a word of purchase, denoting the person or persons to take? If it be taken as a word of limitation, then Miss Charlotte Nelson took an estate tail, which was enlarged by the operation of the statute to an estate in fee-simple; but if it be taken as a word of purchase, she took an estate for life only.

It is laid down in 3 *Cruise's Dig.*, *tit.* 38, *C.* 14, *sec.* 48, *p.* 360, that where an estate is devised to a person for life, remainder to his issue, with words of limitation superadded, the word issue will in that case be considered as a word of purchase; and for this proposition the cases of *Luddington vs. Kime*, 1 *Ld. Raym.*, 203; *S. C.*, 1 *Salk.*, 224; *Backhouse vs. Wells*, 10 *Mod.*, 181; and *Doe vs. Collis*, 4 *T. Rep.*, 294, are cited. In the first of these cases the devise was to A. for life, and if he had issue male, then to such issue male and his heirs, and if he died without issue male, to B. and his heirs. It was held that A. took but a life estate, and that both the remainders were contingent. In the case of *Backhouse vs. Wells*, the devise was to one for life, and after his death to the issue male of his body, and to the heirs male of the bodies of such issue, and it was there held that the first taker took only an estate for life; and in the case of *Doe vs. Collis*, the testator devised his estate to his two daughters, to be

equally divided between them, viz : one moiety to one and her heirs, and the other moiety to the other for life, and after her decease to the issue of her body and *their heirs* for ever ; and it was held that the second daughter took only an estate for life, with remainder to her children as purchasers. These cases, and the principle maintained by them, although criticised by text writers of high authority, have been sanctioned and adopted by the Courts of this State, as was fully shown in the recent case of *Shreve vs. Shreve*, 43 *Md.*, 382, and in which latter case the doctrine of *Luddington vs. Kime*, 1 *Ld. Raymond*, 203, was re-affirmed and applied to its full extent. In the case of *Shreve vs. Shreve* the clause of the devise involving the question now under consideration, when stripped of its verbiage and reduced to its legal elements, as stated in the opinion, was to the child of the devisor *for life*, remainder to the issue of such child, lawfully begotten, and to *their heirs* for ever ; and it was because of the superadded words of limitation that the word *issue* was there construed to be synonymous with *children*, and therefore a word of purchase. Without the superadded words of limitation, the devise would, according to the rule in *Shelley's Case*, have created an estate tail in the first taker ; but, to give effect to all the terms of the devise, the superadded words of limitation had the effect of annexing the inheritance to the person or persons answering the description of issue, so that the inheritance was in the issue, and not the first taker. And if the devise under consideration was to the first taker for life, and if she leave lawful issue, then to said issue and *their heirs* for ever, the question would seem to be entirely concluded by the cases already referred to, and others to which reference could be made; and it only remains to inquire whether the superadded words "*in fee*" are equivalent to the legal terms for limiting a fee-simple estate.

The usual and ordinary words for conveying a fee-simple estate, are "heirs" or "heirs and assigns for

ever," but a devise to a man "for ever," or to one "and his assigns for ever," or to one "in fee-simple," will pass an estate of inheritance to the devisee, notwithstanding the omission of the legal words of inheritance. *Co. Litt.*, 9*b* ; 2 *Bl. Com.*, 108. And in a case in South Carolina, where the devise was to A. for life, remainder to his issue *for ever,* it was held that the words "for ever," being equivalent to a limitation in fee to the issue, they took as purchasers. *Myers vs. Anderson*, 1 *Strobh. Eq.*, 344. This, we think, is in accordance with the common sense of the matter ; and in the case before us, we think the words "in fee" are fairly to be construed to mean fee-simple. That is their ordinary signification, and it is a short way of expressing an estate in fee-simple, that is in very general use. We take those words as equivalent to the words "their heirs ;" and our conclusion is, upon the authorities referred to, that Miss Charlotte Nelson took but a life estate in the lands devised.

It appears, by a record offered in evidence, that the Baltimore County Court, as a Court of equity, on a bill filed by one Smith against Charlotte Nelson, and John Russell and wife, in 1842, decided that Charlotte Nelson took a fee-simple estate under the devise in question. That proceeding, of course, does not bind the present plaintiffs, not being parties thereto, and they make no claim through or under any person that was a party. There were no reasons assigned for the decree that was passed, and however much respect we may entertain for the opinion of the learned Judges who determined the question, we have been compelled, by force of authority, to dissent from the conclusion at which they arrived.

2. Having decided that Miss Charlotte Nelson took only a life estate in the land devised, it is next contended that the devise over to Ann Buchanan was after an indefinite failure of issue of Charlotte Nelson, and was, consequently, void, as being too remote ; and, upon that supposition, Mrs.

Isabella Nelson died intestate of the reversion in fee, which became vested in Charlotte Nelson and Ann Buchanan as heirs-at-law of their mother; and as the defendants claim under Charlotte Nelson all the right and estate that she could convey, the plaintiffs would only be entitled to recover to the extent of one-half of the land described in the declaration; and in support of this position special reliance is placed upon the case of *Tongue's Lessee vs. Nutwell,* 13 *Md.,* 415.

We have just decided that the devise to the issue of Charlotte Nelson was the same thing as a devise to her child or children; that the word *issue,* as used in the devise, is a word of purchase, and not of limitation, and that if the life tenant had died leaving lawful issue that issue would have taken a fee-simple estate in the land devised; and we think, upon rules of fair construction, the words "lawful issue," used in describing or designating the event upon the happening of which the estate was devised over, should be taken to refer to and mean the same thing as the words "lawful issue" in the immediately preceding devise; that it would defeat the manifest intent of the testatrix to hold that the devise over in the event of the first taker dying without lawful issue means, not children, but an indefinite failure of issue, that is to say, the failure of all descendants in future generations. In the case of *Ryan vs. Crowley,* 1 *Ll. & Goold,* 7, where a similar question arose, Sir EDWARD SUGDEN, then Chancellor of Ireland, said: "It is then objected, that the limitation over is to take effect after the general failure of issue, and is, therefore, too remote; but I cannot consider the clause to mean the failure of issue generally, but the death of the particular class of issue, viz: the first line of issue, the child or children to whom the property is given by the preceding sentence." And as authorities for the same construction, see the cases of *Montgomery vs. Montgomery,* 3 *Jo. & Latouche,* 47; *Kavanagh vs. More-*

*land, Kay,* 16 ; *Bradley vs. Cartwright, Law Rep.,* 2 *C. P.,* 511 ; and *Daniel vs. Whartenby,* 17 *Wall.,* 639.

In the case of *Luddington vs. Kime,* before referred to, the Court held, not only that the superadded words of limitations constituted the word " issue " a word of purchase, but that the limitation to the issue was not an executory devise, being after a freehold, but a contingent remainder in fee, and that the devise over of the remainder to B. was a fee also ; but that those fees were not like one fee mounted on another, nor contrary to one another, but two concurrent contingencies, of which either would start according as it happened ; so that the remainder were contemporary and not expectant one after the other. Or, as it may be more accurately stated, the devise over takes effect as an alternative contingent remainder, in the event of their being no issue to take the fee as purchaser. *Golder vs. Cross,* 5 *Jur., N. S.,* 252.

Further examination of the question is unnecessary. It may be considered as settled by this Court in the recent case of *Shreve vs. Shreve,* 43 *Md.,* 400. And we are of opinion that the devise over, upon the dying without lawful issue of Charlotte Nelson, to Ann Buchanan for life, and after her death to the *heirs of her body* then living, in fee, was good as a contingent remainder ; but whether Mrs. Buchanan took but a life estate, or an estate tail, by force of the rule in *Shelley's Case,* is, under the admitted facts of this case, unimportant to be decided, for in either case the plaintiffs would be entitled to recover all the land claimed.

The case of *Tongue vs. Nutwell,* 13 *Md.,* 415, relied on by the defendants, seems to have proceeded upon the conclusion that there was nothing in the will there construed to clearly indicate an intention on the part of the testator that the words " and on failure of such issue, then to vest," etc., should be restricted to a failure of issue at the death of the first taker. In this case, we think it clear and

unmistakable that the words "lawful issue," immediately preceding the devise to Mrs. Buchanan, were designed by the testatrix to have the same meaning precisely as the similar words immediately following the devise to Miss Charlotte Nelson.

It results from what we have decided to be the true construction of the devise in question, that the Court below committed no error in granting the prayers on the part of the plaintiffs, and in rejecting the first prayer on the part of the defendants. And as to the defendants' second prayer, it being admitted and shown that they claim under the late Miss Charlotte Nelson, who died in January, 1871, and as the plaintiffs could assert no claim to the possession of the estate until after her death, it follows that the Court was right in refusing that prayer as well as the first.

We must, therefore, affirm the judgment.

*Judgment affirmed.*

(Decided 8th March, 1877.)