L. FORD ET AL. v. T. C. McBRAYER ET AL.

(Filed 3 May, 1916.)

**1. Wills—Rule in Shelley's Case.**

The application of the *Rule in Shelley's case* is recognized in North Carolina, with a disposition of our courts to restrict rather than enlarge its operation in order to effectuate, when practicable, the intention of the grantor or testator as gathered from the will or deed.

**2. Same—"Issue"—Testator's Intent.**

The language of the *Rule in Shelley's case* confines its application to cases where the ancestor takes an estate of freehold with limitation over "to his heirs or the heirs of his body in fee or in fee tail," etc., and the words "issue" or "issue of the body" not being employed, and being more flexible than the word "heirs," this latter expression will ordinarily be construed as meaning children, or particular persons designated to take after the falling in of the life estate, in contradistinction of heirs generally, so as not to extend the rule, but to preserve the intention of the testator or grantor, when nothing appears upon the face of the instrument to show the contrary.

**3. Same—Estates for Life—Residuary Clause.**

The objection to the application of the *Rule in Shelley's case*, that there is no precedent life estate, is minimized or destroyed in this case, by a residuary clause in the will construed which disposes of all other property of the testator.

**4. Wills—Rule in Shelley's Case—"Bodily Issue"—Testator's Intent.**

A devise of a certain tract of land to the testator's two children, John and Laura, "to be equally divided between them, the part of Laura to be hers as long as she lives, and then to her bodily issue; and if she should marry, my son shall see that her husband shall not dispose of her lands." *Held*, the restrictive words as to Laura's estate not being used as to that of John, or elsewhere in the will as to similar devises, she will not be construed to take a fee simple, under the *Rule in Shelley's case*, and the words "her bodily issue" will be construed as meaning "children."

**5. Same—Deeds and Conveyances—Estoppel—Residuary Devises.**

A devise of land to J. and L., to be divided between them; to J. in fee and to L. for life, with limitation over to her children, the balance of the testator's estate to go to J. and L. and other of the testator's children

FORD *v.* McBRAYER.

under a residuary clause in the will. J. and L. divided the land, giving interchangeable deeds with covenants and warranties, and L. died without child, having first conveyed the lands described in her deed from J. to a stranger. *Held,* the deed from J. to L. estopped J. and those claiming under him as against the later grantee of L., and the deed of L., being for her present and future interest, conveyed also all the interest in the land L. may have acquired either by deed, descent, or as a devisee in the residuary clause of the will, in this case there being no difference between the latter two.

APPEAL by plaintiffs from *Harding, J.,* at August Term, 1915, of RUTHERFORD.

This is a proceeding for the partition of a tract of land formerly belonging to Joshua Ford, who died leaving a will, the parts of which material to this controversy are as follows:

"Third. It is my will that my daughter Laura and son John shall have the tract of land on which I now live, containing 84¾ acres, to be equally divided between them. Said Laura's part to be hers as long as she lives, and then to go to her bodily issue; and, if she should marry, that my son John shall see that her husband shall not dispose of her part of the land.

"Fourth. It is my will that my son John shall have one mule and one wagon, one cow to John, and one cow and calf to Laura.

"Fifth. It is my will that all my other property be equally divided between my son James and my daughters Rachel and Hannah and Laura and my two sons, Lewis and John, to be divided by themselves if they can agree; if not, to pick three disinterested men to divide for them."

After the death of Joshua Ford, his two children, John and Laura, divided the land referred to in the third item of the will by deeds with full covenants.

At the time of the death of Joshua Ford, he left surviving six children—Lewis, James, John, Rachel, Hannah, and Laura. These were the six children mentioned in the residuary clause of the will of Joshua Ford. Hannah died before Laura, and John died after Laura; and neither Hannah nor John left a will, nor did either of them leave any descendants. Laura's husband died before 10 February, 1902.

Laura conveyed the land in controversy, being the land described in the deed to her from John Ford, to the defendant McBrayer, and died leaving no children, and no children were ever born to her.

The plaintiffs contend that Laura Ford took only an estate for life under the will of Joshua Ford, and that upon her death without having had children the title descended to the heirs of Joshua Ford, or passed under the residuary clause in the will.

The defendant McBrayer contends that Laura took an estate in fee under the rule in *Shelley's case,* and, therefore, that he is the owner of the whole of said land under the deed from Laura.

He contends further that if she had only a life estate he is the owner of two-fifths of said land under the several deeds executed by the parties.

His Honor held that Laura took an estate in fee, and entered judgment accordingly, and the plaintiffs excepted and appealed.

*Eaves & Edwards for plaintiffs.*

*McBrayer & McBrayer, Tillett & Guthrie, and Didlake & Gower for defendant.*

ALLEN, J. The rule in *Shelley's case* is well established as a rule of property in this State. It is much older than the case which has given it a name, which was decided in the reign of Queen Elizabeth.

"Some writers trace its origin to the feudal system, which favors the taking of estates by descent rather than by purchase, because in the former case the rights of wardship, marriage, relief, and other feudal incidents attached, while in the latter the taker was relieved from those burdens. Others attribute it to the aversion of the common law to fees in abeyance, a desire to promote the transferability of real property, and, as far as possible, to make it liable for the specialty debts of the ancestor." *Daniel v. Whartenby,* 84 U. S., 639.

That rule is thus stated by Coke: "Where the ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same instrument an estate is limited, either mediately or immediately, to his heirs in fee or in fee tail, *the heirs* are words of limitation of the estate and not of purchase." Coke, 104. And by Chancellor Kent: "Where a person takes an estate of freehold, legally or equitably, under a deed, or will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of any interest of the same legal or equitable quality to his heirs, or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." 4 Kent Com., 245.

The rule has been abrogated by statute in most of the States, and in those where it still prevails the disposition is to restrict rather than enlarge its operation, because it so frequently defeats the expressed intention of the grantor or testator.

The language of the rule confines it to cases where the ancestor takes an estate of freehold and there is a limitation "to his heirs in fee or in fee tail," and it is an extension of the rule to apply it to a limitation to "issue" or "issue of the body" or "bodily issue," which are not *ex vi termini* within the rule (*Daniel v. Whartenby,* 84 U. S., 639; *Timanus v. Dugan,* 46 Md., 402); and which when used in relation to property are susceptible of three meanings: (1) as describing a class who are to take as joint tenants or tenants in common with those named; (2) as

descriptive of a class who are to take at a definite and fixed time as purchasers; (3) as denoting an indefinite succession of lineal descendants who are to take by inheritance (23 Cyc., 259; *Mendenhall v. Mower,* 16 S. C., 201); but when used in the latter sense, as an indefinite succession of lineal descendants who are to take by inheritance, they have been frequently held to be words of limitation and not of purchase, and to give to the first taker a fee under the rule, although Mr. Fearne says (p. 149) that the word "issue" "has not the same established legal import and extent" as heirs, and on page 495, that a "devise of a term to A. for life, and afterwards to his issue, it seems does not enlarge the estate of A., but after his death the whole rests in the issue."

The cases construing the terms "issue," "issue of the body," "bodily issue" are collected in 4 Words and Phrases, p. 3782 *et seq.;* and it will also be found from an examination of these and other authorities that there is much difference of opinion as to the method of approaching the construction of the language when used in deeds and wills, some courts holding that the primary meaning of "issue" is a succession of lineal descendants, and that this interpretation must be given to the term unless a contrary intent appears, while others, when dealing with the rule in *Shelley's case,* which they are not disposed to extend, and having in mind that the word "issue" is "more flexible" than the word "heirs" (*Daniel v. Whartenby, supra*), and may be applied to those who take by purchase, hold that it must clearly appear that it was the intention to use the term as one of limitation to denote a succession of lineal descendants who are to take by inheritance before that construction will be adopted.

The latter view seems to prevail in this State. *Smith v. Proctor,* 139 N. C., 322; *Faison v. Odom,* 144 N. C., 107; *Puckett v. Morgan,* 158 N. C., 347.

The Court said in the first of these cases, after stating the rule: "There are, however, well recognized exceptions to this rule, two of which we will advert to at present in general terms: In the first place, whenever the testator or grantor annexes words of explanation to the word 'heirs,' indicating that he meant to use the term in a qualified sense, as a mere *descriptio personarum* or particular description of certain individuals, and that they, and not the ancestor, were to be the points of *termini* from which the succession to the estate was to emanate or take its start, then in all such cases where the word 'heir' is thus explained or restricted it is to be treated as a term of purchase, and not of limitation. For example, the expressions, 'heirs now living,' 'children,' 'issue,' etc., are words of limitation or purchase, as will best accord with the manifest intention of him who employs them. Under this qualification of the rule, the intention prevails against the strict construction"; in the second: "There have been cases where it was the

manifest intention of the testator that the second taker should take, not from him, but from the first taker; then the words 'children,' 'issue,' etc., as well as the word 'heirs,' have been construed in some jurisdictions as words of limitation, and the rule in *Shelley's case* applied. *Brinton v. Martin,* 197 Pa. State, 618. In the will under consideration there is no manifest intention that Edward Faison should be the root of a new succession and that those in remainder should take as his heirs. In order to bring the rule into operation, the limitation must be to the 'heirs *qua* heirs' of the first taker. 'It must be given to the heirs or heirs of the body as an entire class or denomination of persons, and not merely to individuals embraced within such class.' 25 Am. and Eng. Enc., 650, and cases cited. When the devise is to one for life, and after his death to his children or issue, the rule has no application, unless it manifestly appears that such words are used in the sense of heirs generally. 25 Am. and Eng. Enc., *supra,* 651, and cases cited"; and, in the third: "In all cases where the word 'issue' is used, or it is clear that the words 'heir or heir of the body' were used in the sense of 'issue' it has been held that the rule did not apply."

Applying these principles to the will before us, is it manifest that the words "bodily issue" "are used in the sense of heirs generally"?

The strongest position taken by the defendant is that there is no limitation over in the event of the death of Laura without issue, and that if the construction of the plaintiff is adopted, and Laura took only a life estate, there has been no disposition of the remainder in fee, and he invokes the presumption that the testator intended to dispose of all his property; but this position is minimized, if not destroyed, by the fact that there is a residuary clause which disposes of all other property of the testator.

There is also clear indication on the face of the will that the testator did not intend to devise a fee-simple estate to Laura.

The land is devised to Laura, "to be hers as long as she lives," and *Lord Chancellor Sugden* said in *Montgomery v. Montgomery,* 3 J. and L., 47, speaking of the language, "during his natural life": "These words are, I think, entitled to weight, although when the intention requires it they may be wholly rejected." The devise to the issue is, in apt words, to create a remainder—"to be hers as long as she lives, *and then to go to her bodily issue.*"

The use of the term "bodily issue" has some significance, although, technically, "issue," "issue of the body," or "bodily issue" mean the same thing. "The words 'issue of his body' are more flexible than the words 'heirs of his body,' and courts more readily interpret the former as the synonym of children and a mere *descriptio personarum* than the latter." *Daniel v. Whartenby,* 84 U. S., 639.

In the third item of the will the testator devises the entire tract of land to John and Laura, and it is clear that he did not intend that they should have the same estates in the land, and it is not questioned that John took an estate in fee. If the testator thought it necessary to add the words "and then to go to her bodily issue" in order that Laura might take a fee, why do not the same words follow the devise to John, and why do they not appear in the residuary clause where all the rest of his property is devised to his six children? Again, there are two devises and one bequest to Laura, and different language is used. He gives her a cow and calf and her part of the residue without qualification, but as to the land in controversy it is only "to be hers as long as she lives, and then go to her bodily issue."

Why this difference in language used in connection with devises and bequests to the same person if it was not intended that different interests should pass?

The clause requiring John to see that the husband of Laura should not dispose of her part of the land is equally consistent with the construction giving Laura a life estate or a fee, and furnishes very little if any aid in arriving at the intent of the testator as to the estates devised; and, giving to the whole will full consideration, we are of the opinion, and so hold, that Laura took an estate for life.

If so, what interest in the land in controversy did the defendant acquire under the deed executed to him by the devisee, Laura?

It would seem that the remainder in fee in the land in controversy, being undisposed of in the third item of the will by reason of the death of Laura without issue, would pass as property undisposed of to the residuary devisees named in the fifth item (*Faison v. Middleton, ante,* 170); but it is not important to determine this question, because the same parties are heirs and residuary devisees, and in either event would take the same interest.

The deed from John Ford to Laura purports to convey the land and not his interest in it, and it has full covenants of warranty and seizin, and the deed from Laura to the defendant also conveys the land and has the same covenants of warranty and seizin, and they would, therefore, operate not only to pass the title owned by the grantors at the time of the execution of the deeds, but also after-acquired title by reason of the estoppel. *Wellborn v. Finley,* 52 N. C., 228; *Foster v. Hackett,* 112 N. C., 546; *Zimmerman v. Robinson,* 114 N. C., 49; *Buchanan v. Harrington,* 141 N. C., 39; *Beacom v. Amos,* 161 N. C., 357.

Therefore the defendant McBrayer takes—

1. Laura's one-sixth interest. This passed by the express words of her conveyance to McBrayer.

2. Laura's one-fifth interest in her sister Hannah's one-sixth, thus giving Laura one-thirtieth of the whole. This one-thirtieth passed to defendant McBrayer by virtue of Laura's deed to him containing covenants of warranty and seizin, and in this way passing the one-thirtieth interest which Laura acquired after the date of her deed.

3. John's one-sixth interest. This passed to Laura under John's deed to her, which conveyed to Laura with covenants the entire fee-simple interest in the land in question, this one-sixth interest having passed to defendant McBrayer.

4. John's one-fifth interest in Hannah's one-sixth interest. Upon Hannah's death intestate, without descendants, John acquired a one-fifth interest in her one-sixth interest, that is to say, one-thirtieth of the whole. This one-thirtieth which John acquired at Hannah's death passed first by virtue of John's deed to Laura, because of the covenants contained in John's deed to Laura, and it passed from Laura to the defendant McBrayer, as a title after acquired by Laura, and passing by virtue of the estoppel arising out of the covenants in Laura's deed to McBrayer.

Thus defendant McBrayer has acquired one-sixth plus one-thirtieth plus one-thirtieth or two-fifths of the whole land described in the complaint.

The judgment of the court below is reversed, and judgment will be entered in accordance with this opinion.

Reversed.