CLARENCE JAMISON *v.* LEONTINE J. McWHORTER.

*Devise—Trust Estate—Limitation to Children—Life Estate—Power to Mortgage.*

A trust estate cannot be supported where no active duty is to be performed by the trustee, and the whole management of the property is in the hands of the *cestui que trust.*

The testator devised a certain farm to his executor in trust for certain uses, etc., and then directs as follows:

"To permit and suffer my son Clarence to use, occupy, and rent, and to receive the rents, issues, and profits of the said Capelle farm during the term of his natural life, for his proper use and benefit, and in case of the death of the said Clarence, leaving a child or children, or the issue of such, remainder to such child or children or the issue of such, their heirs and assigns, free and discharged from the aforesaid trust." "In case of the death of any of my said sons * * * without leaving child or children, or the issue of such, the share of the one so dying shall go to the survivor or survivors, or the issue of such, as may be deceased, subject to the same conditions, etc., as their own property."

The rule in Shelly's Case has no application. The limitation to the child or children of Clarence, who had none at the time, and to the issue of such of them as should be dead at the time of his death, leaving issue, is to the children as a class in remainder; and Clarence takes an estate for life and not an estate tail.

The will of the testator containing no authority to mortgage the premises to raise money for the maintenance of the sons, the Court of Chancery has no power to authorize the same, and no title can be acquired by the sale by the sheriff in execution of the m rtgage upon the said premises.

Houston, J., dissents.

(*June 3, 1885.*)

CASE STATED on questions reserved by the Superior Court for New Castle County.

*John H. Rodney*, for plaintiff:

The case originates upon an agreement between the plaintiff and the defendant for the sale of land, and non-performance of that agreement by the defendant upon the ground of insufficiency of title in the plaintiff.

The plaintiff's title arises under the will of his father, Thomas Jamison (hereafter set forth), and involves the construction of that will presenting two principal questions:

1st. Whether the plaintiff took a life estate in the premises ("inter alia") in question.

2d. Whether, if so, that life estate has been enlarged by the subsequent devise.

The will of Thomas Jamison devises as follows:

" I give and devise unto my executor and the guardian hereinafter named and appointed for my minor children all my estate, real and personal, not herein otherwise disposed of, to have and to hold the same unto them or the survivor or survivors of them, *in trust* nevertheless for the uses, intents, and purposes hereinafter set forth and declared." Then as follows:—" To have and to hold the farm known as the Capelle Farm, containing about two hundred and twelve acres, situate in Red Lion hundred, in trust, to rent the same to good and careful tenants, at the best cash or share rents attainable, as in their judgments shall be most advantageous, and to collect, expend, and invest the same as hereinafter provided, until the majority of my youngest son who shall live to attain the age of twenty-one years." Then follows a provision to raise a charge upon the premises for the purpose of equalizing the estate among his children, and following that direction, then " To permit and suffer my son Clarence to use, occupy, and rent, and to receive the rents, issues, and profits of the said Capelle Farm during the term of his natural life, for his proper use and benefit, and in case of the death of the said Clarence, leaving a child or children, or the issue of such, remainder to such child or children or the issue of such, their heirs and assigns, free and discharged from the aforesaid

trust." Then follows,—"In case of the death of any of my said sons" (naming them), "without leaving child or children, or the issue of such, the share of the one so dying shall go (to) the survivor or survivors, or the issue of such, as may be deceased, subject to the same conditions, etc., as their own property."

It is admitted that the trustee has performed the duties specifically enjoined upon him, and that no guardian who in the will was named with the executor as trustee was ever appointed by the testator, but afterwards was by the Orphans' Court.

This therefore is a devise *first* to trustees for certain defined and specific purposes, whose duties and interest in the estate are limited.

It is a conceded principle of law that the estate of trustees continues only so long as the purposes of the trust require it. When the object and aim of the trust has been served, then the legal estate in the trustees ceases, and the person entitled to the beneficial interest takes it, even where there are words of inheritance in the devise to trustees.

In this case the trustees took the estate to manage until the majority of the youngest child, then to raise a charge upon the same for the purpose of equalizing the property, and after that to permit and suffer each son named to take the rents, issues, and profits, and use, occupy, and rent the same for his proper use and benefit,—these terms being stronger than many of the cases supporting the principle. It is admitted that the youngest child came of age May, A. D. 1878.

*1 Powell Dev.*, 223; *1 Barn. & Cres.*, 360 (341); *2 Exch.*, 58 (593); *4 Exchequer*, 550 (569); *21 Penna. St.*, 81; *7 Term. Rep.*, 433, 652; *Hawkins on Wills*, 143; *6 Ad. & Ellis*, 860.

In this case, therefore, it is confidently assumed that when the youngest child arrived at majority, and the duties of the trustees had been performed, and the "*cestui que use*" directed to have the property, the legal estate vested in him, the devisee of the beneficial use, and vested in him as a legal estate for life. This reaches, therefore, the second point:

How did the estate for life vest in Clarence Jamison, the "*cestui que use?*"

The provision in the will directing the trustees "to permit and

suffer Clarence Jamison to take the rents and profits," etc., during his natural life, gives him an estate for life.

The property in question, which is mentioned in the agreement sued upon, is part of the Capelle Farm, and as such included in the above devise. This principle is intimately connected with and flows from the rule as laid down above as to the estate of the trustees.

In short, the duties of the trustee ceasing, and the direction being to permit and suffer the " *cestui que use*" to take the rents and profits, he takes the legal estate.

*1 Powell Dev.*, 221 ; *12 East*, 455 ; *4 Taunton*, 822 ; *2 Taunton*, 109 ; *2 Salkeld*, 679 ; *2 Jarman* Wills, 202 ; *4 B. & Ad.*, 33 ; *6 Ad. & Ellis*, 860.

Upon these authorities and the language of the will, by implication of law, Clarence Jamison took an *estate for life*, as full and perfect as if specifically devised to him.

The next question is the principal one in the case, and upon it the determination of it depends. Undoubtedly the rule in Shelly's case prevails in this State. *Griffith v. Derringer*, 5 Harr., 484.

That rule is to the effect that if in any instrument an estate of freehold is given to one (say for life), and by the same instrument either mediately or immediately is given to his heirs either in fee or in tail, the second estate, whether fee or tail, vests in the first taker. In such cases those words are words of limitation, showing a continuance of the estate of the first taker ; but where it is construed that the second taker takes not through or because of the ancestor, but directly from the testator, there the words are words of purchase and the rule does not attach.

The two estates must be of like character, *i. e.* both legal or both equitable ; but it is submitted that the estate of Clarence Jamison is a legal estate, arising from implication of law.

The rule in Shelly's case applies equally where the ancestor takes a freehold by express limitation, by resulting trust, or by implication of law. *2 Kent Com.*, 215.

The question therefore now is, Does the rule in Shelly's case apply ? and, considering the devise after the death of Clarence Jamison (he having a legal estate for life), are the words there used words of limitation or of purchase ?

It is not denied that ordinarily the word " children" in a will is used as a word of purchase and not of limitation. Still, as courts have sometimes construed the word " heirs" and even " heirs of the body" to be words of purchase, so have the words " child" or " children" been construed as words of limitation, in order to effectuate the intention of the testator. The rule of construction is not so binding and absolute but that it may admit of variation. *Price v. Taylor*, 4 Casey (Penna.), 95, Lowrie, J.

It will be remembered that at the time this will was made and went into operation there were no children " *in esse*." That, however, is only mentioned as a means to arrive at the intention of the testator,—showing that the words were not used as " *descriptio personarum*," and as such have no application.

The intention of the testator is that after the life estate and through the life tenant his descendents, children, *issue*, or heirs shall take, using the words therefore as " *nomen collectivum*," and intending to convey the whole interest in the direction of Clarence Jamison and his heirs. If this be so, then the estate in fee limited to the general heirs of the ancester (Clarence Jamison) by the operation of the rule (Shelly's case), becomes in him a fee simple, or fee tail,—in *1 Powell Dev.*, 334, " It is immaterial whether 'the heirs' are described under that or any other denomination, as 'issues' or 'son,' which cases create an estate tail in the first taker.

*Doe Dem., Jones v. Davis*, 4 Barn. & Ad., 43 ; *Mellish v. Mellish*, 2 Barn. & Cres., 520.

If this be true, therefore, that the testator uses the words " child, etc.," as the denomination of a class, that class being the descendants of the ancestor, then the words should be read as if they were " *heirs*,"—and to this effect is a very strong case in point, *M'Kee v. McKinley*, 9 Casey, 92. So in the present case the intention of the testator is that the estate should go in fee to those who could be the heirs of Clarence Jamison. The estate given is not distributive, *i. e.*, in shares, but generally to children and issue and their heirs; giving the whole estate to those who would take as heirs, and therefore indicating the intention of the testator that the heirs shall take. If this intention as to the second estate is plain, the fact that he *intended* a *life estate* to the ancestor, and no more, can make no difference. While he might have intended a

life estate to the first taker, if he intended the second devise to be equivalent to a devise to the heirs of Clarence Jamison, there the rule applies,—the word " child " or " children " becoming words of limitation.

*Steacy v. Rice*, 3 Casey, 75 (cited in 9 Casey, 92.)

In this connection the word *issue* as used is still further indicative that the testator was merely pointing out the line of transmission, and not indicating the persons with particularity. He was expressing his intention that the heirs of the first taker should take the fee. Therefore, although his intention might have been plain that Clarence Jamison should have only an interest for his life, if his intention was also that the children and their issue generally of Clarence Jamison—using those words as *descriptive of his heirs*— should take the remaining fee, then, by the rule in Shelly's case, Clarence Jamison takes a fee simple or fee tail. The devise over to the other sons has no effect, for the evident intention of the testator was that the heirs of Clarence Jamison should take, and if that is so, the devise falls under the preceding principle.

The intention of the testator can be gathered from the first devise to Albert Jamison, where in express terms he says, " if he should die without issue," showing that he uses the word "children" as general heirs.

As to the last point, namely, the sale under the mortgage given by direction of the Chancellor. At the time that mortgage was given, the legal estate was in the trustee, the youngest son not having arrived at the age of twenty-one years. If the mortgage was properly given under the order of the Chancellor, then the condition under which the estate was to go out of the trustee never arose.

In *Perry on Trusts*, 717, it is laid down, that while trustees cannot sell trust proper, yet courts of equity, upon cause shown, may decree a sale; and if a sale, a mortgage, which is a *conditional sale*. *Perry on Trusts*, 719. It is true that the devise is to the guardian, to expend the rents and profits for maintenance of the minors. These rents and profits were to come through the hands of the trustee, and the trustee, by his petition to the Chancellor, represented that those funds were not sufficient for the purpose designated. While therefore the trustee could not, considering the devise of the rents and profits for a specific purpose to be to him,

sell the property, yet the authority of the Chancellor was properly exercised, and the limitation in the order of the court to pay the mortgage out of the rents and profits in three years was directory only to the trustee, and cannot affect the security of the mortgage; for if he did not, which he did not, the mortgagee alone could look to the premises mortgaged as security for his debt. It was for the purpose of carrying out the provisions of the will that the order of the Chancellor was made.

The plaintiff therefore insists that he can give a good fee simple title to the lands and premises mentioned in the said agreement,

1st, Under the sale on the mortgage ordered by the Chancellor;

2d, Under the construction of the will of Thomas Jamison.

*Alexander B. Cooper*, for defendant:

What estate has Clarence Jamison *under the will of his father* in the farm known as the " Capelle Farm," a part of which he has agreed to sell? or presuming he had no legal estate, under the will.

What title (if any) did he obtain to the farm by virtue of his being the purchaser at the sheriff's sale, upon the mortgage?

I admit,

1st, That the trustee under the first provision of the will took the legal estate,—subject of course to the trusts imposed upon him, and to be determined when they were executed or performed; but that the *active* purposes of the trust ended " at the majority of the testator's youngest son, who lived to attain the age of twenty-one," and at that time the legal estate was transferred to the " *cestui que trust*."

When real estate is devised to trustees, although with words of inheritance, *prima facie*, the trustees only take so much of the legal estate as the active purposes of the trust require.

*Hawkins on Wills*, 143, and *cases cited*.

This being true, what is the legal force and effect of the subsequent trust in the will?—" in trust, to permit and suffer my son Clarence to use, occupy, and rent, and to receive the rents, issues, and profits of the said ' Capelle farm' during the term of his natural life, for his proper use and benefit, and in case of the death of the said Clarence leaving a child or children, or the issue of such, remainder to such (child) or children."

I also admit that, under this provision, Clarence took the legal estate; for although a devise of real estate to a trustee, in trust to *pay* the rents and profits to A, vests the legal estate in the trustee, yet when the devise to the trustee is a trust, to *permit* and *suffer* A to receive them vests ths legal estate in A.

*Hawkins on Wills*, 140, and cases cited; *2 Jarman on Wills*, 294, &c.

The language of the testator is even stronger than the principle of the law requires. He says not only " to permit and suffer" his son Clarence to receive rents, issues, and profits, but to use, occupy, and rent the *land itself*.

The principal question therefore is, What is the extent of Clarence's legal estate? Is it within the purview and operation of the rule in Shelly's case? that is, is the word " child" or " children" a word of purchase or limitation? Is it a starting of a new stock, or do they take through their ancestors by descent?

I respectfully submit that the interest of Clarence Jamison (the plaintiff) in the land in question, is a life estate *in terms*,—" for the term of his natural life," and that the rule in Shelly's case does not apply to the words " child" or " children" as used in the will. The word " child" or " children" is always presumed to be a word of purchase, and the onus or burden is on the objector (the defendant in this case) to show that the testator has used them in the sense of " heirs,"—that such was his intention, and the intention must be manifest and plain.

And the court will observe in this connection that the devise to the " children" is not *immediate*,—that is, to Clarence *and* his " children,"—for in that case, under the resolution in Wild's case he having no children *in esse* at the time of the devise, he would take an estate tail. But here it is by way of a remainder, *after an estate for life*, to the child or children who shall survive him,—or such as he shall leave at his death ; making it an entirely different case, so that the fact that Clarence had no " children" at the time of the devise, can and does not affect the case in the least; the rule of law being that when words of purchase are used, such as a devise to " *A and his children*" the children must be *in esse*, at the time of the devise, so as to take immediately, jointly, concurrently with the parent. If they are not *in esse*, of course they

cannot so take, and in such case the word "children," to have any meaning, must be construed as "*heirs*." But where they take in remainder, after a life estate, it is only necessary for them to be in existence when the particular estate determines, for they do not take until then.

*Wild's Case*, 3 Coke Report (part 6, 16 b.) 288; *Guthrie's Appeal*, 37 Penna. St., 9; *2 Powell on Devises*, 299, 495; *Clew's Appeal*, 37 Penna. St., 23.

When an express limitation to a particular class of issue by an appropriate term of designation, as "children," "sons," "daughters," etc., is followed by the words "in default of issue," or *similar* words introducing an ulterior devise, these words are referable to the objects of that limitation, and do not enlarge the preceding gift.

*Hayes on Dispositions of R. E.*, 32, 107 (7 Law Library, 16 and 58); *Hawkins on Wills*, 191–255.

The only remaining question is as to the title conferred (if any) by the sale under the mortgage given by the trustee in pursuance of the order of the Chancellor.

It is conceded that the will gives no authority to the trustee to make such a mortgage.

*Also*, that the order of the Chancellor confers no such power, but restricts the trustee to the rents and profits as security for the sum borrowed.

The trustee exceeded his authority, and therefore no title could be given by the sheriff's deed.

The plaintiff's title is derived *solely* from the will of his father, which I submit is only an estate for life, with the remainder to his children in tail.

COMEGYS, C. J. :

The questions submitted by the foregoing case, are, in effect—

1st. What estate did Clarence Jamison take under the will of his father, the testator?

2d. Was the mortgage made, of the "Capelle Farm," by virtue of lawful authority?

There are two conclusions which may be drawn from the language employed by the testator in settling his estate. That language

—or rather so much of it as concerns the question of title is in these words—bringing the several expressions together :

"I give, devise and bequeath unto my said executor and the guardian hereinafter named and appointed for my minor children all my estate, real and personal, not herein otherwise disposed of, to have and to hold the same unto them, or the survivor of them, the survivor's heirs and assigns. In trust nevertheless for the uses, intents and purposes hereinafter set forth and declared." * * *

"To have and to hold the farm known as the 'Capelle Farm,' containing about two hundred and twelve acres, situated in Red Lion hundred, and the farm known as the 'Homestead Farm,' containing about two hundred and thirty acres, situated in St. Georges hundred aforesaid. In trust to rent the same to good and careful tenants at the best cash on share rents attainable as in their judgments shall be most advantageous, and to collect, expend and invest the same as hereinafter provided until the majority of my youngest son who shall live to attain the age of twenty-one years, then to raise out of or charge upon the said farms respectively such sum or sums as shall be necessary to make equal the shares of my sons Edgar, Clarence and Oliver, as hereinafter provided, and subject to such charge and condition. To permit and suffer my son Clarence to use, occupy and rent, and to receive the rents, issues and profits of the said 'Capelle Farm' during the term of his natural life for his proper use and benefit, and in case of the death of the said Clarence leaving a child or children, or the issue of such, remainder to such child or children or the issue of such, their heirs and assigns free and discharged from the aforesaid trust."

"In case of the death of any of my said sons Edgar, Clarence and Oliver, without leaving any child or children or the issue of such, the share of the one so dying shall go (to) the survivors, or survivor and the issue of such as may be deceased subject to the same conditions and limitations as their own shares respectively hereinbefore designated."

It was the obvious purpose of the testator to keep the lands in the hands of his trustees during the life of his sons respectively ; but he was not aware of the rule of law that a trust estate cannot be supported where no active duty is to be performed by the trustee, and the whole management of the property is in the hands of

the *cestui que trust*.  When, therefore, the testator provided, as he did, with respect to the " Capelle Farm" and the " Homestead Farm," he in effect gave his sons respectively legal estates in them.

We are then to consider the devise, with respect to the " Capelle Farm " as a disposition of a legal estate: the question is what legal estate?  The plaintiff contends that the devise to him is of an estate of inheritance in fee-simple, or fee-tail which can be turned into a fee ; the defendant that a life estate only is given him.  They both cite authorities in support of their respective contentions.  The testator's sons were unmarried and without issue at his death.

It may be considered settled law that  where lands are devised to a person *and* his children, it is to them equally as tenants in common where there are any living at the date of the will ; but that where there are none at that time, the words are held to be those of limitation, and the same as *heirs of the body or issue*.  There could not well be a different construction.  Adopting the reasoning of *Wild's case*, 6 Coke, 17, the children cannot take as immediate devisees, not being in *rerum natura* ; nor in remainder, for the devise is immediate.  But this is not a will of that kind, and Wild's case does not govern it.  Here the testator devises to Clarence, his son, a legal estate, for life expressly, and in case of his death leaving a child or children or the issue of such *remainder* to such child or children or the issue of such, their heirs and assigns, etc., and in case of his death without leaving child or children or the issue of such, his share shall go to Oliver and Edgar, or the survivor of them, and the issue of such one of them as may be then dead leaving issue, subject, ect.  This is the effect of the language used by the testator.

The rule in Shelly's case has no application to the devise to to the testator's sons.  Neither in the construction of a deed or will, where the words " child" or " children" are used, and not *heirs* or *heirs of the body*, has the rule any place. *3 Greenleaf Cruise*, Tit. 38, Chap. 14, Sec. 39 ; Tit. 32, Chap. 23, Sec. 28.  There is, therefore, no embarassment of decision on account of that rule.

It seems impossible to distinguish this case, in principle, from that of *Loddington v. Kime*, 3 Lev., 431 ; 1 Salk., 224 ; 1 Ld. Raym., 203.  There the devise was to A for life without impeach-

ment of waste, and in case he should have any issue male to such issue male and his heirs forever, and if A died without issue male, etc., A was held to be tenant for life, with a contingent remainder to his issue in fee, and a concurrent contingent remainder to the ulterior devisee. See *Hayes on Estates Tail* (7 Law Lib.), 29 and 30, and Table IV. And in Wild's case it is said to have been resolved (the reference is to Moor, 220) "that if a man, as in the case at bar, devises land to husband and wife and after their decease to their children, in this case although they have not any child at the time, yet every child which they shall have after, may take by way of remainder according to the rule of law." The reason given is "for his intent appears that their children should not take immediately but after the decease of Rowland (the husband) and wife."

Further. Where there is a limitation to children in remainder as a class, it will vest in them as they come *in esse,* and will open and let in each successive member of the class until the determination of the particular estate. *Doe v. Penrhyn,* 3 T. R., 484, cited in 3d Greenl. Cruise, 213, note 1. In this case there is a limitation to the child or children of Clarence, who had none at the time. It is to them as a class, and to the issue of such of them as should be dead, at the time of his death, leaving issue. This shows that they were to take together, and not in succession one after the other, and precludes the idea of an estate tail. It would add nothing to the import of the language used, to have provided that they should take as tenants in common. And, then, the children and grand children were to take in *remainder;* which they could not do if Clarence had an estate tail. Issue in tail do not take in *remainder,* but by descent *per formam doni.*

From these authorities it seems clear that Clarence Jamison took only an estate for life under his father's will in the Capelle Farm.

With respect to the question of title acquired by Clarence Jamison under the sale by the sheriff in execution of the mortgage made by the Trustee under the order of the Court of Chancery of New Castle county —there does not appear to be in the will of the testator any authority to make a mortgage of the premises to raise money for the maintenance and education of the testator's sons; nor was there any, as it appears to me, in the said Court to make

such order.   The whole proceedings for sale of the Capelle Farm, therefore, appear to have been without authority.

HOUSTON, J., dissenting : The counsel in the case concur in the opinion that under the provisions of the will the legal estate of the trustees in the lands devised to them continued only so long as the purposes of the trust required it, but when the active purposes of it had been served, the legal estate of the trustees in them ceased and became vested in the *cestui que trust*, and which occurred in the devise of the particular premises in question, a part of the "·Capelle Farm," in trust to permit and suffer his son Clarence to use, occupy and rent, and to receive the rents, issues and profits of the said Capelle Farm during the term of his natural life, for his proper use and benefit, and in case of the death of the said Clarence leaving a child or children or the issue of such, to them, their heirs and assigns free and discharged from the aforesaid trust," when Oliver, his youngest son, attained the age of twenty-one years, and which the counsel also admit occurred in the year 1878.   But they differ as to the testamentary construction to be given by us to the concluding terms of it, " and in case of the death of the said Clarence leaving a child or children or the issue of such, to them their heirs and assigns free and discharged from the aforesaid trust," whether they are to be construed as words of limitation in analogy to the rule in Shelly's case, or as words of purchase in this devise ? The counsel for the defendant contends for the former, the counsel for the plaintiff for the latter interpretation.   For they agree that when the youngest son attained the age of twenty-one years, the duties of the trustees ceased, and the legal estate in the Capelle Farm vested in the *cestui que trust* of it under the devise, Clarence Jamison, for the term of his life, subject to the limitation over of it on his death leaving a child or children or the issue of such, to them their heirs and assigns, as directed in the words of the devise, and the meaning and construction of which presents for our consideration the first question to be determined between them in the case.   For the plaintiff it is contended they constituted a devise of the " Capelle Farm" to the son of the testator, Clarence Jamison, in fee tail, and for the defendant that they constitute a devise of it

to him for the term of his life only, and at his death leaving a child or children, or the issue of such remainder to them.

Before I proceed, however, to express any opinion upon this question, I think it proper to recur to and repeat the whole of the item in which this devise occurs in the will as set forth in the case stated since all of the terms and clauses of it must be considered and construed together in order to determine the correct meaning and interpretation of it, and which are not fully presented in the briefs of counsel. It is as follows : " I give and devise unto my executor and the guardian hereinafter named and appointed for my minor children all my estate, real and personal, not herein otherwise disposed of, to have and to hold the same unto them or the survivor or survivors of them, *in trust* nevertheless for the uses, intents and purposes hereinafter set forth and declared. To have and to hold the farm known as the " Capelle Farm," containing about two hundred and twelve acres, situated in Red Lion hundred, and the farm known as the " Homestead Farm," containing two hundred and thirty acres, situated in St. Georges hundred aforesaid. In trust to rent the same to good and careful tenants at the best cash or share rents attainable as in their judgment shall be most advantageous, and to collect, expend and invest the same as hereinafter provided, until the majority of my youngest son who shall live to attain the age of twenty-one years, then to raise out of, or to charge upon the said farms respectively such sum or sums as shall be necessary to make equal the shares of my sons Edgar, Clarence and Oliver, as hereinafter provided and subject to such charge and condition.

To permit and suffer my son Clarence to use, occupy and rent and receive the rents, issues and profits of the said " Capelle Farm" during the term of his natural life for his proper use and benefit, and in case of the death of the said Clarence leaving a child or children or the issue of such, their heirs and assigns free and discharged from the aforesaid trust.

To permit and suffer my son Oliver to use, occupy and rent and receive the rents, issues and profits of the said " Homestead Farm" during the term of his natural life, for his proper use and benefit, and in case of the death of said Oliver leaving a child or children or the issue of such, their heirs and assigns free and discharged from the aforesaid trust.

To invest all the rest and residue of my estate not herein otherwise disposed of in bonds and mortgages as aforesaid, interest payable semi-annually, and keep the same so invested until the majority of my youngest son who shall attain the age of twenty-one years, whereupon I desire my Trustees aforesaid to have the the said "Capelle Farm" and the said "Homestead Farm" valued at their just and true value in money by three substantial men in the neighborhood, and that to such valuation the trustees shall add the four thousand dollars and all interest accrued thereon which hereinbefore is charged upon the "Jamison Corner Farm," and all the rest and residue of my estate invested as first directed in this item, and also any other legacies or devises to which my said sons Edgar, Clarence and Oliver may become entitled, and the aggregate sum thus ascertained to apportion in equal shares among my sons Edgar, Clarence and Oliver, and their issue, the issue in all cases taking their parent's share. In the said apportionment my said son Clarence to take the said "Capelle Farm" with such incumbrance or addition as may be necessary to equalize the shares of the said Edgar, Clarence and Oliver, and the said Oliver to take the "Homestead Farm" with such like incumbrance or addition ; but the share of the said Edgar shall be in money, invested in good bonds and mortgages as aforesaid, the interest payable to him after such apportionment semi-annually, during his natural life, and from and immediately after his death the principal and all interest accrued thereon payable to his child or children or the issue of such.

The rents and profits arising from the Capelle and Homestead farms, and the interest of all sums invested as in this item prescribed, and so much thereof as shall be necessary, shall be expended by the said guardian in the maintenance and education of any said sons Edgar, Clarence and Oliver, and the residue, if any, invested for their benefit, first deducting yearly a sum not exceeding one hundred and fifty dollars to be expended on each of said farms to keep the same productive and in good condition.

In case of the death of any of my said sons Edgar, Clarence and Oliver without leaving any child or children, or the issue of such, the share of the one so dying shall go to the survivors or survivor, and the issue of such as may be deceased subject to the same

conditions and limitations as their own shares respectively herein-before designated."

It is admitted that the youngest son of the testator attained the age of twenty-one years in the year 1878, and that the purpose and limitation of the trust then expired, and that his son, Clarence Jamison, then become seized of the legal estate in the "Capelle Farm" for the term of his life free and discharged from the trust, but it is denied that he took any larger estate or interest in it under the limitations over it in case of his death, leaving a child or child-ren, or the issue of such, as directed in the devise, and the whole item of the will above referred to, whilst it is contended on the part of the plaintiff and the authorities cited by his counsel, that as it is a gift of the farm by will, the rule in Shelley's case applies to it, the words "*children*" employed in the devise over at his death, should be construed to be words of limitation, and not of purchase, and that he consequently took under the devise, either an estate in fee simple or in fee tail in the farm. And there is no doubt that such words so employed in devises have been so construed in many cases more than he has cited, although the general rule of testa-mentary construction is admitted by him to be to the contrary, that is to say, that ordinarily the word " children" in a will is used as a word of purchase and not of limitation.

But with regard to the class of cases which constitute an ex-ception to that general rule, and to which I have just alluded, Mr. Jarman remarks that it should be observed, however, that in a considerable class of cases the word child or children has received an interpretation extending it beyond its more precise and obvious meaning, as denoting immediate offspring, and been considered to have been employed as *nomen collectivum*, or as synonymous with *issue* or descendants ; in which general sense it has often the effect, when applied to real estate, of creating an estate tail. Where this construction has prevailed, however, it has generally been aided by the context. There it was synonomous with issue in all events. *2 Jarm. on Wills*, 73. And where the intention of the testator clearly appeared to have used the term as equivalent to the word issue or descendants, and the devisee for life had no child or child-ren when the will was made, or at the time of the death of the

17

testator, and it therefore could not apply as a *descriptio personarum*, such a construction was given to it, as a word of limitation and not of purchase. *1 Pow. on Dev.*, 334. And accordingly it was held in such cases that the parent and devisee for life took an estate tail in the land devised. *Broadhurst v. Morris, 2 Barn. Adolp. 1 ; Byfield's Case,* cited by *Hale, C. J.,* in *King v. Snelling, 1 Vent.,* 231 ; *Robinson v. Robinson, 1 Burr.,* 38 ; *Seward v. Willock,* 5 East., 198 ; *Raggett v. Beatty,* 2 Moo. & Pay., 512 ; *Doed. Simpson v. Simpson,* 5 Scott, 770.

I consider that this construction of the words—" dying without leaving child or children or the issue of such" as a word of limitation, and clearly importing an intention on the part of the testator to use them as synonomous with the words issue or descendants, is also aided by the context of the devise, and the repetition of the same identical words in each of the devises in it to his three sons respectively, and particularly, by the terms employed by the testator in his final disposition and limitation over of the whole subject matter of the devise in the last clause of the item, which are as follows: "In case of the death of any of my said sons Edgar, Clarence and Oliver without leaving any child or children, or the issue of such, the share of the one so dying shall go to the survivors or survivor, and the issue of such as may be deceased subject to the same conditions and limitations as their own shares respectively hereinbefore designated." And although the will seems to have been written with much care and deliberation in the dispositions and limitations of it, it is only by implication that any child or children of either of them, or the issue of such, who may be living at his or her or their father's death, can take any share, or interest in the several estates so devised to them, according to the literal import of the terms of the will, unless we interpret the words in question to be words of limitation, and to confer such by construction an estate tail in the " Capelle Farm" on the said son, Clarence Jamison, and an estate tail in the Homestead Farm on the said son, Oliver Jamison. And yet, it seems to me that no one can read this will and observe the manifest desire and solicitude of the testator reflected in it, to limit the two farms to the two sons named respectively for the terms of their natural lives, with remainder at their death to the issue of

each of them, if they should leave any, without coming to the conclusion that it must have constituted the main and paramount purpose in the mind of the testator for making the two devises in particular as we find them in the item in question. I am therefore of the opinion that the testator intended by the use of the words in the devise in question of the "Capelle Farm" to his son, Clarence Jamison, for the term of his natural life, and in case of the death of the said Clarence, leaving a child or children or the issue of such remainder to such child or children or the issue of such, their heirs and assigns, according to the rule of testamentary construction applicable in such a case as this, a general failure of issue at his death, and that under the devise he took an estate tail in the said farm, as it may now be considered well settled that the word issue or its equivalent term according to the clear intention of the testator, is employed in a devise of real estate to a person for life, remainder to his issue at his death, is *nomen collectivum*, a word of limitation, and not of purchase, and synonomous with the words, *heirs of his body*, which are of all words the most appropriate in legal phraseology to confer an estate tail general on the first taker of the land under the devise. *2 Jarm. on Wills*, 328, 329.

But it appears that the provisions made by the testator in this item of his will for the maintenance and education of his sons Edgar, Clarence and Oliver until the majority of the youngest son who should live to attain the age of twenty-one years, out of the rents and profits of the Capelle Farm and Homestead Farm, and the interest of all sums invested by his trustees as prescribed in this item, proved inadequate for the purpose, and the executor who was also one of the trustees under the will preferred his petition to the Chancellor representing that by the will of the testator all his real estate was held by the petitioner in trust for his three minor sons, Edgar, Clarence and Oliver Jamison, consisting of three farms in New Castle county, and that the gross annual rents and profits of them amounted to about three thousand dollars, subject to the payment of taxes, repairs and improvements provided for by the will, but that the net rents did not then amount to a sufficient sum to comfortably board, clothe and educate the said minors, and that their guardian was in arrears and then indebted on their account to the amount of eight hundred dollars or more, and that if he could

be authorized to borrow as trustee under the will a sum not exceeding twelve hundred dollars for a few years, he thought he would then be able to pay the sum out of the increased rents of the estate, and that sum would relieve the condition of the guardian and enable him to pay up the amount of indebtedness against the said minors. He therefore prayed the Chancellor to allow him to borrow upon the best terms he could the sum of twelve hundred dollars as trustee, or in his own name for the use of said trust estate with which to pay the liabilities then standing against said minors for past maintenance.

And thereupon the Chancellor made an order that he be authorized and empowered to borrow on account of the trust estate the sum of twelve hundred dollars for three years, to be reimbursed by the rents and profits of the trust estate, and that the sum, or so much thereof as should be necessary, should be applied to the payment of debts then accrued and unpaid for the support, maintenance and education of Edgar, Clarence and Oliver Jamison, the three minor children of Thomas Jamison, deceased, to be expended by their guardian, John P. Belville, who shall give· receipts to the trustee for the same, and be chargeable with it as for other moneys received on account of said minor children.

The order was made on the 20th day of February, 1874, and on the 10th day of April following the executor and trustee borrowed the sum of twelve hundred dollars from Bentley Worth for that purpose, and as such, made, executed and delivered his bond and mortgage to him for that sum, to be paid in three years from that date, the lands embraced and described in the mortgage consisting *inter alia* of the said " Capelle Farm ;" and the loan not having been paid at maturity, nor as late as six years after the date thereof, the mortgagee proceeded and obtained judgment on the mortgage, and at the November term, 1880, of the Superior Court in and for said county, the said farm was sold under a writ of *levari facias* thereon by the sheriff of the county and was bought at the sale by the said Clarence Jamison (the youngest of the said sons of the testator having in the meantime attained the age of twenty-one years), and who since the sale and conveyance of it by the sheriff to him had entered into an agreement with the defendant, Leontine J. McWhorter, to sell and convey to him the portion

of it designated and described in the agreement, and which agreement he refuses to comply with on the ground alleged by him of insufficiency of title in the plaintiff to the premises as set forth in the case stated.

In the view which I have taken of the question already considered and disposed of by me, it is not for me to enter into the consideration of the remaining question as to the title conferred on the purchaser by the sale under the mortgage given by the trustee pursuant to the order of the Chancellor, but if it were necessrry for me to consider and decide that should be obliged to hold under the facts and circumstances of this case that the mortgagee had a legal right to execute and sell on the mortgage at any time after the failure of the trustee for three years to pay it, and being seized as such of the legal estate in the premises when he so mortgaged them by the authority of the Chancellor, the purchaser took the legal title to them at the sheriff's sale upon it. The case falls within the reason and policy of the doctrine that a trust to raise money out of the profits of land will include a power to sell or mortgage; and such a construction of the power has long been an established principle in the Courts of Equity. *4 Kent's Com.,* 148.