## Kemp, Appellant, *v.*  Reinhard.

*Will—Devise—Rule in Shelly's case.*

Testatrix devised to a son the use and income of seven enumerated properties "for and during his lifetime." In the next clause of her will she directed as follows: "And immediately after the decease of said son I give and devise the above described seven tracts or pieces of land, devised to him herein for life, to his issue in fee. Should he, however, die without leaving issue living," then over to another son in fee. Other devises in the will were to the devisees, their "heirs and assigns." *Held,* that the devise in question was to the son for life, and that the rule in Shelly's case had no application, inasmuch as the issue of the son did not take as issue from him, but as the root of a new succession directly from the testatrix.

Argued Feb. 28, 1910. Appeal, No. 194, Jan. T., 1909, by plaintiff, from judgment of C. P. Berks Co., April T., 1909, No. 17, for defendant on case stated in suit of Jacob E. Kemp *v.* Valerius S. Reinhard and Pierce G. S. Kemp. Before Fell, C. J., Brown, Mestrezat, Potter and Stewart, JJ. Affirmed.

Case stated to determine the marketable title to real estate. Before Endlich, P. J.

From the record it appeared that the material portions of the will of Amelia Sunday under which plaintiff claimed title were as follows:

"Item. I give and devise to my son, Pierce G. S. Kemp, his heirs and assigns, all that certain messuage, tenement and tract of land situated partly in Maxatawny township and partly in Richmond township, said county, adjoining lands of Joseph Mengel, Caroline Sell, heirs of John

Rahn, deceased, Conrad Stitler, Frederick Hill and others, containing one hundred and twenty three acres, more or less, with the appurtenances, and all hay and straw thereon at the time of my decease.

"Item. I give and devise unto my son Jacob E. Kemp, the use and income for and during his lifetime of all that certain three story brick store and dwelling house and lot of ground, in which I now reside situated in Kutztown aforesaid, bounded on the north by White Oak street, on the south by property of Albert S. Heffner, on the east by Sander alley, and on the west by Main street, containing a width on Main street of fifty three feet and four inches and a depth of one hundred and sixty feet.

"Also of all that certain tract or piece of land situated in Maxatawny township, said County, bounded by lands of the Keystone Normal School, Dr. J. S. Trexler, estate of Perry Levan, deceased, and others, containing six acres, more or less.

"Also of all that certain lot or piece of ground, situated in Kutztown aforesaid, bounded by lands of George J. Kutz, deceased, Jeremiah S. Trexler, Walnut street, and by a public road, leading from Kutztown to Kutz's Mill, containing one acre and one half, more or less.

"Also of all that certain lot or piece of ground, situated in Maxatawny township, said County, bounded by lands of Ephraim Sharadin estate of Jonathan Biehl, deceased, and others, containing three acres, more or less.

"Also of all that certain tract of meadow lands situated in Kutztown aforesaid, bounded by Greenwich street, lands of the Keystone Shoe Manufacturing Company, Hannah Glasser and others, containing one and one quarter acres, more or less.

"Also of all that certain two story brick dwelling house and lot of ground situated in Kutztown aforesaid, adjoining property of Solomon Ahn, David Saul, a private on the rear, and Walnut street.

"And also of all that certain tract or piece of woodland,

situate in Ruscombmanor township aforesaid, containing three acres and ninety two perches, more or less, it being the same tract which my father, Jacob Sunday, deceased, purchased from Jacob Brown and devised to me.

"And immediately after the decease of the said Jacob E. Kemp, I give and devise the above described seven tracts or pieces of land, devised to him herein for life, to his issue in fee. Should he however die without leaving issue living, I give and devise the same unto my son, Pierce G. S. Kemp, his heirs and assigns in fee.

"Item. In consideration of the services rendered me by my said son, Pierce G. S. Kemp, since he is twenty one years of age, and as a compensation therefor, I give and devise unto my said son Pierce G. S. Kemp, his heirs and assigns, all that certain two story frame dwelling house and lot of ground situated on White Oak street, in Kutztown aforesaid, bounded by Sander alley, property of William G. Stetler, Ulrich J. Miller and White Oak street.

"Item. All the rest, residue and remainder of my estate not hereinbefore disposed of I give, bequeath and devise unto my said sons Pierce G. S. Kemp and Jacob E. Kemp, their heirs and assigns in equal shares."

Defendant refused to take plaintiff's title.

The court in an opinion by ENDLICH, J., entered judgment for defendant.

*Error assigned* was in entering judgment for defendant on case stated.

*Isaac Hiester*, for appellant.—The main devise without any implication arising from the words "die without leaving issue" is a limitation of an estate tail: Angle v. Brosius, 43 Pa. 187; Grimes v. Shirk, 169 Pa. 74; Elliott v. Pearsoll, 8 W. & S. 38; McIntyre v. Ramsey, 23 Pa. 317; Philadelphia, etc., Co.'s App., 93 Pa. 209; Potts's App., 30 Pa. 168; Allen v. Markle, 36 Pa. 117; Wynn v. Story,

38 Pa. 166; Auman v. Auman, 21 Pa. 343; Steacy v. Rice, 27 Pa. 75; Kleppner v. Laverty, 70 Pa. 70; Bassett v. Hawk, 118 Pa. 94; Carter v. McMichael, 10 S. & R. 429; Paxson v. Lefferts, 3 Rawle, 59; George v. Morgan, 16 Pa. 95.

The words "die without leaving issue" do not import a definite failure of issue under the Act of July 9, 1897, P. L. 213, when a contrary intention appears by the will and such contrary intention does appear where the preceding gift without any implication arising from such words is a limitation of an estate tail to the first taker: Re O'Bierne, 1 Jones & LaTouche, 352; Dawson v. Small, 10 Eng. Ruling Cases, 847; Dilworth v. Schuylkill Improvement Land Co., 219 Pa. 527; Hastings v. Engle, 217 Pa. 419; Lewis v. Link Belt Co., 222 Pa. 139.

*F. A. Marx*, with him *C. H. Ruhl*, for appellee.—The rule in Shelly's case has no application: Guthrie's App., 37 Pa. 9; Findlay v. Riddle, 3 Binn. 139; Ingersoll's App., 86 Pa. 240; Shaner v. Wilson, 207 Pa. 550; Mulliken v. Earnshaw, 209 Pa. 226; Todd v. Armstrong, 213 Pa. 570; Wood v. Schoen, 216 Pa. 425; Taylor v. Taylor, 63 Pa. 481; Daley v. Koons, 90 Pa. 246; Elliott v. Pearsoll, 8 W. & S. 38.

OPINION BY MR. JUSTICE BROWN, May 2, 1910:

The testatrix gave to her son, Jacob E. Kemp, the use and income of seven enumerated properties "for and during his lifetime." Immediately after this provision for him there is the following separate clause in the will: "And immediately after the decease of the said Jacob E. Kemp, I give and devise the above described seven tracts or pieces of land, devised to him herein for life, to his issue in fee. Should he however die without leaving issue living, I give and devise the same unto my son, Pierce G. S. Kemp, his heirs and assigns in fee." The judgment of the court below on the case stated to determine whether the appellant had a fee simple in the prop-

erties was that he took but a life estate and that the testatrix had herself devised the remainder to the stock of a new inheritance, who, upon his death, would take from her as purchasers.

Though the intention of the testatrix may have been to give only a life estate to the appellant, if in the devise there was a limitation of the estate to his heirs to take by devolution from him at his death, her intention is overridden by the rule in Shelly's case; but in every case in which the application of that rule is involved the first question is whether the devisor or grantor intended a limitation of the remainder in fee or in tail as such to the heirs of the first taker, or that there should be the root of a new succession taking directly from the devisor or grantor as purchasers. When the latter intention appears the rule has no place and the intention must be given effect.

The rule in Shelly's case is not a means of ascertaining the intention of a testator, nor is it one of the construction of a will. It is one of law, unbending in its application, when the intention of the testator is ascertained that the heirs of his devisee of a freehold estate are to take from the devisee qua heirs. When such intention is ascertained the heirs take by descent from the devisee, and there is, therefore, vested in him an estate of inheritance: Doebler's App., 64 Pa. 9; Shapley v. Diehl, 203 Pa. 566. "It is therefore always a precedent question, in any case to which it is supposed the rule is applicable, whether the limitation of the remainder is made to the heirs in fee or in tail, as such, and in solving this question, the rule itself renders no assistance. It is silent until the intention of the grantor or devisor is ascertained. But if that intention is found to be that the remainder-men are to take as heirs of the grantee or devisee of the particular freehold, instead of becoming themselves the root of a new succession, the rule is applied, though it may defeat a manifest intention that the first taker should have but an estate for life. It is very carefully to be noted, that

in searching for the intention of the donor or testator, the inquiry is not whether the remainder-men are the persons who would have been heirs, had the fee been limited directly to the ancestor. The thing to be sought for is not the persons who are directed to take the remainder, but the character in which the donor intended they should take. In the very many cases in which the question has arisen, whether the rule was applicable, the difficulty has been in determining whether the intention was that the remainder-men should take as heirs of the first taker, or originally as the stock of a new inheritance:" Guthrie's Appeal, 37 Pa. 9.

That the testatrix intended to devise a life estate to her son, and nothing more, most clearly appears. The devise is to him "for and during his lifetime," and this intention is repeated in the clause following the description of the properties, in which she refers to them as "devised to him herein for life." This twice-expressed intention receives emphasis from a comparison of the devises to Jacob with those to her other son Pierce. Those to the latter are to him, "his heirs and assigns;" and still further emphasis comes from the residuary clause of the will, in which the residue of the estate of the testatrix is given to her two sons, Pierce and Jacob E., "their heirs and assigns in equal shares." But what defeats the application of the rule in Shelly's case is the unmistakable intention of the testatrix, not only that Jacob was to get only a life estate, but that after his death the remainder should not pass by devolution from him to his heirs, but directly from her to a designated class or to a designated individual. Her words are: "After the decease of the said Jacob E. Kemp, I give and devise the above described seven tracts or pieces of land, devised to him herein for life, to his issue in fee. Should he however die without leaving issue living, I give and devise the same unto my son, Pierce G. S. Kemp, his heirs and assigns in fee." From a reading of the entire will the conclusion is not to be avoided that the testatrix had two independent

thoughts in her mind when she devised the seven properties: First, that she would give them to Jacob for life, and for life only; and she did so give them to him: and, second, that she would pass the remainder to be enjoyed by devisees from her, and she did so pass it in her words just quoted. As the remainder in these properties will pass to the issue of Jacob, or to Pierce, as purchasers from the testatrix, the rule in Shelly's case has no place in this controversy, and the learned and discriminating judge below correctly so held.

Judgment affirmed.