SARAH T. M. FARRELL,

*vs.*

JOSEPH WELLS FARIES,

Defendant,

MABEL MITCHELL STEVENSON, ADA MITCHELL FENIMORE, ESTHER D. IRWIN MITCHELL, RAYMOND HARRY MITCHELL, JR., ESTHER DOROTHY MITCHELL BEATY, ELIZABETH IRWIN MITCHELL and WILLIAM COTTONHAM MITCHELL,

Intervening Defendants.

*Kent, Dec.* 17, 1940.

*Charles H. LeFevre,* of Washington, D. C., for complainant.

*Howard E. Lynch, Jr.,* for defendant, Joseph Wells Faries.

*John B. Hutton,* for intervening defendants.

THE CHANCELLOR: This is a bill filed by the complainant Sarah T. M. Farrell, for the specific performance of a contract, made by Joseph Wells Faries, one of the defendants, to purchase a lot of about three (3) acres of land in the town of Smyrna; and the sole question is whether the complainant has a fee simple title thereto, or whether she merely has a life estate.

The lot in question was devised to the complainant by the name of Sallie Tinghman Mitchell by the last will and testament of William C. Mitchell, deceased. That will, among other things, provides:

"Item. I give and bequeath to my said niece, Sallie Tinghman Mitchell, the lot of ground situated on the corner of Main and Frazier Streets in the town of Smyrna with the three story frame dwelling, stable and cow house thereon erected, adjoining land of Samuel Taylor and being the same lot, sold at Sheriff's Sale as the property of Henry Spruance, and at said sale purchased by me: Also a pasture lot situated in said town of Smyrna and containing about three acres of land, adjoining land late of Martha Cummins and lands of Robert Norris, for and during her life time and no longer, and after the death of my said niece, if she leaves lawful issue of her body it is my will that the above described real estate, shall go to the child or children of my said niece, their heirs or assigns forever; In case my said niece should

die without leaving lawful heirs of her body, then and in such case it is my will. that said real estate hereinbefore bequeathed to her. during her life, shall go to William C. Mitchell, Jr., for and during his natural life, and on his decease, to his sons, Harry Mitchell and Frank Mitchell, their heirs, executors and assigns. forever.

"Item. I give and devise unto my nephew, William C. Mitchell, Jr., my farm known as the "Cloverdale Farm" situated in Duck Creek Hundred, Kent County and State of Delaware for and during his life and no longer and after his death, I give devise and bequeath the said Cloverdale Farm unto the sons of the said William C. Mitchell, Jr., namely to Henry Mitchell and Frank Mitchell, their heirs and assigns, forever.

"Item. I give and devise unto my nephew, Daniel B. C. Mitchell my farm known as the "Cave Landing Farm" situated in Duck Creek Hundred, Kent County, State of Delaware, for and during his natural life, and on his death, it is my will that said Cave Landing Farm, shall go to his son, Elmer Mitchell, his heirs and assigns forever."

The complainant, Sarah T. M. Farrell, contends that the rule in *Shelley's Case* applied to the devise to her, and that she, therefore, acquired originally an estate in fee tail in the lot covered by the contract of sale. If she had an estate in fee tail, it is conceded that it was barred by the conveyance to Senator Hughes, and that his reconveyance of the same property to her gave her a fee simple title thereto. But the question is whether she ever had an estate in fee tail therein, or anything more than a mere life estate, with contingent remainders to other persons.

Under the rule announced in *Shelley's Case*, 1 *Coke* 104 a, 76 *Eng. Rep.* 206, and, perhaps, in earlier English cases, when the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to her heirs in fee or in tail, the word "heirs" is a word of limitation of the estate given or conveyed, and not a word of purchase, and the ancestor takes a fee simple or fee tail, as the case may be. *Wright v. Gooden*, 6 *Houst.* 397; *Doe ex dem. Mc-Colley v. Lampleugh*, 3 *Houst.* 461; 1 *Tiff. Real Property*, (2d *Ed.*) § 148; 69 *C. J.* 505.

This is an arbitrary rule of the common law, relating to real property, which is always followed in this state if the provisions of the will and the words used therein bring it within its scope; and this is true, though the application of that rule would seem to defeat the real intent of the testator to give a mere life estate to the first taker. *Jones v. Rees*, 6 *Pen.* 504, 69 *A.* 785, 16 *L. R. A.* (*N. S.*) 734; *Wright v. Gooden*, 6 *Houst.* 397; *Griffith v. Derringer*, 5 *Har.* 284; *Caulk's Lessee v. Caulk*, 3 *Pen.* 528, 52 *A.* 340; see, also, 1 *Tiff. Real Property*, (2d *Ed.*) § 151; 69 *C. J.* 508. But, notwithstanding the arbitrary and technical nature of the rule in *Shelley's Case*, it is not applied in total disregard of the real sense in which the testator has used the technical words of inheritance, or other equivalent words of like nature, relied on. The real intended meaning of such words is, therefore, a preliminary question that must be determined from the context of the instrument before applying that rule. *Caulk's Lessee v. Caulk*, 3 *Pen.* 528, 52 *A.* 340; *Jamison v. McWhorter*, 7 *Houst.* 242, 31 *A.* 517;[1] *Taylor v. Taylor*, 63 *Pa.* 481, 3 *Am. Rep.* 565; *Kemp v. Reinhard*, 228 *Pa.* 143, 77 *A.* 436, 29 *L. R. A.* (*N. S.*) 958; 69 *C. J., Wills,* § 1586, *p.* 511. That is frequently a matter of considerable difficulty, but when it is apparent that the life estate given in the first instance is intended to be followed by a remainder to the direct descendants of the life tenant, in an indefinite line of inheritable succession, as distinguished from those individuals who might answer to the designation of heirs at some particular time, the rule in *Shelley's Case*, applies. *Wright v. Gooden*, 6 *Houst.* 397; 1 *Tiff. Real Property*, (2d *Ed.*) § 152; 30 *Harv. Law Rev.*, 195; see, also, *Caulk's Lessee v. Caulk*, 3 *Pen.* 528, 52 *A.* 340; *Jamison v. McWhorter*, 7 *Houst.* 242, 31 *A.* 517. That rule does not apply, however, when it is apparent from the language used

---

[1] The judgment entered in this case would seem to indicate that the opinion of the majority of the court was delivered by Judge Houston, and not by the Chief Justice, as would appear from the report of that case. See *Caulk's Lessee v. Caulk*, 3 *Pen.* 528, 52 *A.* 340.

that the testator intended such persons to take from him as the stock of a new inheritance at the termination of the life estate. *Wright v. Gooden,* 6 *Houst.* 397; 1 *Tiff. Real Property,* (*2d Ed.*) §§ 151, 152.

When unexplained by the context, a devise over in case the first devisee for life should die without leaving lawful heirs of her body indicates that an indefinite failure of issue of the first taker is intended, and by the application of the rule in *Shelley's Case* and by implication creates an estate in fee tail. *Griffith v. Derringer,* 5 *Har.* 284; *Martin's Lessee v. Roach,* 1 *Har.* 477, 492, *note; Jamison v. McWhorter,* 7 *Houst.* 242, 31 *A.* 517; see, also, *In re Reeves,* 10 *Del. Ch.* 324, 92 *A.* 246; *Id.,* 10 *Del. Ch.* 483, 94 *A.* 511; *Caulk's Lessee v. Caulk,* 3 *Pen.* 528, 52 *A.* 340; *Doe ex dem. McColley v. Lampleugh,* 3 *Houst.* 461; *Hollett's Lessee v. Pope, et al.,* 3 *Har.* 532; 1 *Tiff Real Property,* (*2d Ed.*) § 26. But primarily and ordinarily a remainder to a child or children of the devisee for life refers to definite individuals and not to an indefinite line of succession, so the rule in *Shelley's Case* is not applicable unless it is clearly apparent from the context of the will that those words were intended to have some other meaning. *Jamison v. McWhorter,* 7 *Houst.* 242, 31 *A.* 517; *Caulk's Lessee v. Caulk,* 3 *Pen.* 528, 52 *A.* 340; *Kemp v. Reinhard,* 228 *Pa.* 143, 77 *A.* 436, 29 *L. R. A.* (*N. S.*) 958; 1 *Tiff. Real Property,* (*2d Ed.*) § 151; 34 *Harv. Law Rev.,* 519.

If the rule in *Shelley's Case* applies, and the particular estate is in terms for life, and no other estate is interposed between it and the remainder, the particular estate will merge into the fee simple or fee tail estate, created by that rule, and will give an estate in possession with no intermediate rights in others. *Wright v. Gooden,* 6 *Houst.* 397; 1 *Tiff. Real Property,* (*2d Ed.*) § 148; 34 *Harv. Law Rev.,* 519. But whether that rule applies depends on whether the complainant acquired an estate in fee tail under the will of William C. Mitchell.

In the first item, above quoted, a gift to Sallie Tinghman Mitchell of the house and lot at the corner of Main and Frazier Streets in the town of Smyrna is followed by the gift to her of the three-acre lot in question "for and during her life time and no longer." The same item then provides:

"* * * and after the death of my said niece, if she leaves lawful issue of her body, it is my will that the above described real estate, shall go to the child or children of my said niece, their heirs or assigns forever."

The testator then further provides:

"In case my said niece should die without leaving lawful heirs of her body, then and in such case it is my will that the said real estate hereinbefore bequeathed to her during her life, shall go to William C. Mitchell, Jr., for and during his natural life and on his decease, to his sons, Harry Mitchell and Frank Mitchell, their heirs, executors and assigns forever."

The precise question to be determined, therefore, is whether the words "without leaving lawful heirs of her body," referring to the complainant, who is in terms the devisee for life, are used in their ordinary and primary sense to indicate an indefinite failure of issue, or whether the context shows that they are intended to have the more restricted meaning of "child or children." In a technical sense, and unexplained by the context, the words "issue of her body" in the preceding phrase would ordinarily be equivalent to the words "heirs of her body," and would have the same meaning [1 *Tiff. Real Property,* (2d Ed.) §§ 26, 144; 69 *C. J.* 521], but the accompanying language indicates that such words were used by the testator in the restricted sense of "child or children." He provided that "if" the life taker should leave "lawful issue of her body," the lot in question should go to her "child or children * * * their heirs or assigns forever." This is a significant provision, and, in the absence of anything to indicate a contrary intent, it would seem to show that William C. Mitchell intended to give a life estate to the complainant, with a remainder in fee, at her death, to her children, if she had any. The use of the usual general words of inheritance, appropriate for the creation of an estate in fee simple, following

the words "child or children," is of some importance in considering this phase of the case, though it is not necessarily conclusive in all cases. See *Daniel v. Whartenby*, 17 *Wall.* 639, 21 *L. Ed.* 661; *Montgomery v. Montgomery*, 3 *Jones & L.* 61; *Taylor v. Taylor*, 63 *Pa.* 481, 3 *Am. Rep.* 565; *Zabriskie v. Wood*, 23 *N. J. Eq.* 541. This conclusion, as to the intent of the testator, is, also, corroborated in some measure by the general scheme of the will and by the nature of other devises to relatives who apparently had a child or children when it was executed. In each of those items, the first devisee was given a life estate, with a remainder to his child, or children, naming them, his or their "heirs and assigns forever." If the words of the subsequent devise over in case the testator's niece, the complainant, "should die without leaving lawful heirs of her body" could be read only with that part of the will giving her, in terms, a life estate, they would ordinarily be construed in their usual primary and technical sense. The words "heirs of her body" in that phrase would, therefore, be words of limitation, and the whole phrase would be construed to refer to an indefinite failure of the heirs of the first taker, of a certain class.

When so construed, the rule in *Shelley's Case* would operate, and the complainant would have an estate in fee tail in the lot in question. But when those words are read with the preceding phrase, the fair inference is that they were used by the testator in the same sense as "issue of her body" and were likewise intended to have the popular and non-technical meaning of "child or children." See *Daniel v. Whartenby*, 17 *Wall.* 639, 21 *L. Ed.* 661; *Loddington v. Kime*, 83 *Eng. Rep.* 766, 91 *Eng. Rep.* 198, 91 *Eng. Rep.* 1031. Viewed from this aspect, the rule in *Shelley's Case* did not apply, and the complainant merely took a life estate under the will of William C. Mitchell.

It is true that the meaning of the words "heirs of her body" is usally much less flexible than the meaning of the kindred words "issue of her body," and that courts will

perhaps more readily construe the latter to mean "child or children" (*Daniel v. Whartenby,* 17 *Wall.* 639, 21 *L. Ed.* 661; 29 *C. J.* 304), but, after all, that necessarily depends on the intent of the testator, as shown by the context of the particular instrument.

The above conclusion, as to the real intended meaning of the words "heirs of her body" would, also, seem to be corroborated in some measure by the fact that the limitation over was to the nephew of the testator for life only. If an indefinite failure of the heirs of the first taker had been contemplated, it seems hardly probable that he could have thought that William C. Mitchell, Jr., would be alive on the happening of that event. *Eichelberger v. Barnitz,* 9 *Watts* 447; *Taylor v. Taylor,* 63 *Pa.* 481, 3 *Am. Rep.* 565; *Roe v. Jeffery,* 7 *T. R., Durn. & E.,* 589; *Barlow v. Salter,* 17 *Ves.* 479; 2 *Jarm. Wills,* (*6th Am. Ed.*) *pp.* 1330, 1331. This seems to be a significant fact that cannot be disregarded in construing the words in question.

At the time of the execution of the testator's will and, also, at the time of his death, the complainant was unmarried, and without children, and that fact is a circumstance which sometimes has some bearing in determining whether particular words, technical or otherwise, were in fact used as words of limitation or as words of purchase. *Simpson v. Reed,* 205 *Pa.* 53, 54 *A.* 499; *Jones v. Davies,* 4 *Barn. & Adolph.* 43, 110 *Eng. Rep.* 371. But it can only be relied on to aid in the interpretation of the particular instrument involved in the case, and its effect necessarily depends on the language used. *Maloney v. Johnson,* 24 *Del. Ch.* 77, 5 *A.* 2d 660.

Neither *Caulk's Lessee v. Caulk, Jamison v. McWhorter,* nor *Griffith v. Derringer, supra,* all of which are relied on by the complainant, are inconsistent with the conclusion that the complainant merely took a life estate in the lot in question, under the will of William C. Mitchell, deceased, and that the rule in *Shelley's Case* does not apply. There are

certain statements in *Caulk's Lessee v. Caulk* to the effect that devises over to the survivors of a class of living persons, on the happening of certain contingencies, did not prevent those limitations from being construed to refer to an indefinite failure of the issue of the first takers, but the language of the will did not require that precise statement. In any event, that exact question is not involved here.

A decree dismissing the complainant's bill, will, therefore, be entered.

Note. On appeal the decree entered in accordance with the foregoing opinion was affirmed by a majority of the Supreme Court. See *post p.* 404, 22 *A. 2d* 380.